# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
October 4, 2010 Session

## JOHN P. KONVALINKA. v. CHATTANOOGA-HAMILTON COUNTY HOSPITAL AUTHORITY

**Appeal from the Chancery Court for Hamilton County**
**No. 08-0334      Howell N. Peoples, Chancellor**

---

**No. E2010-00543-COA-R3-CV - FILED OCTOBER 28, 2010**

---

This is the second time this case, filed by John P. Konvalinka ("the Petitioner") to force disclosure of public documents, has been before us. In the trial court's order that generated the first appeal, the court held that the records the Petitioner requested from Chattanooga-Hamilton County Hospital Authority ("the Hospital" or "Erlanger") were exempt from disclosure under state law, and pretermitted the question of whether they were exempt from disclosure under federal law. On appeal, we held that the records were not protected from disclosure by state law and remanded for a determination of whether they were protected from disclosure by federal law. The Hospital attempted on remand to assert additional state law defenses to disclosure. The trial court held that the new state law defenses were outside the scope of the remand. It also held that federal law did not protect the documents at issue from disclosure. Accordingly, it ordered the Hospital to produce the documents. The Hospital appeals challenging both aspects of the trial court's judgment. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

Fred H. Moore and Joseph R. White, Chattanooga, Tennessee, and Richard L. Shackelford and Lynn M. Adam, Atlanta, Georgia, for the appellant, Chattanooga-Hamilton County Hospital Authority.

John P. Konvalinka, Chattanooga, Tennessee, Pro Se.

**OPINION**

**I.**

As we have stated, this is the second time this case, initiated by a petition filed pursuant to Tenn. Code Ann. §§ 10-7-101, *et seq*., and 10-7-503, *et seq*. (1999 and 2009 Supp.), has been before this Court. The first appeal was ***Konvalinka v. Chattanooga-Hamilton County Hospital Authority***, No. E2008-02091-COA-R3-CV, 2009 WL 1530194 (Tenn. Ct. App. E.S., filed June 2, 2009) ("***Konvalinka I***"). The general factual background of the case is set forth in ***Konvalinka I*** as follows:

> The documents at issue in this Public Records Act case have their genesis from a federal and state investigation surrounding allegations that the Hospital submitted false claims to Medicare and Medicaid and improperly paid remuneration to physicians for referring patients to the Hospital. The Hospital eventually entered into settlement agreements with both the federal Office of Inspector General of the Department of Health and Human Services [("OIG")] and the State of Tennessee. In addition to the settlement agreements, the Hospital entered into a Corporate Integrity Agreement [("CIA")] with the [OIG]. The [CIA] was designed to promote compliance with the applicable statutes and regulations. Among other things, the [CIA] required the Hospital to establish and maintain a compliance program, which included the creation of a compliance committee.
>
> In March 2008, Petitioner served a request for access to public records on the Hospital seeking access to fifty-three separate groups of documents. Only three of the fifty-three requests are at issue in this appeal. These three requests are:
>
> > (12) Copies of all compliance reports submitted to the Compliance Committee since the 2005 settlement between Chattanooga Hamilton County Hospital Authority and the United States Federal Government/United States Justice Department; ...
> >
> > (17) Copies of all minutes from all meetings of the Erlanger Medical Center's Compliance Committee for the past four years; . . . [and]

> (41) Copies of all minutes from all meetings of
> Erlanger's Compliance Committee for the past
> four (4) years. . . .FN1
>
> FN1. Request No. 17 and Request No. 41 appear to request the
> same information. In his brief on appeal, Petitioner
> acknowledges that these two requests do in fact request the same
> documents.
>
> After the Hospital refused to provide these three groups of
> requested documents, Petitioner filed a Petition for Access to
> Public Records with the Trial Court. Petitioner claimed that the
> Hospital lacked a good faith basis upon which to deny the public
> records request. Petitioner requested the Trial Court issue a
> show-cause order requiring the Hospital to appear and show
> cause why the petition should not be granted. Petitioner further
> requested the Trial Court enter an order requiring the Hospital
> to produce the records and award Petitioner his attorney fees.

*Konvalinka I*, at *1-2 (footnote in original, some bracketed material added). We will refer to "these three groups of requested documents" that remain at issue as "the Documents."

On May 7, 2008, the trial court in *Konvalinka I* ordered the Hospital to appear for a hearing on May 22, 2008, "and *show cause, if it has any*, why the subject petition should not be granted." (Emphasis added). The show cause hearing was reset by an agreed order "so that the Court can hear . . . [the Hospital's] argument as to *why any unproduced documents are exempt* from the Tennessee Public Records Act and Tennessee Open Records Law." (Emphasis added). At the hearing, the Hospital asked for leave to filed a post-hearing memorandum to show why it should not be compelled to produce the documents. A day after the hearing, the Hospital filed its "Motion for Protective Order." The only grounds asserted in the motion were that the documents were exempted from disclosure by two specific provisions in the Open Records Acts found at Tenn. Code Ann. § 10-7-504 (a)(2)(A), and Tenn. Code Ann. § 10-7-504(a)(5)(A), and by one provision in the Federal Freedom of Information Act ("FOIA") found at 5 U.S.C. § 552. The trial court agreed with the Hospital on its state law arguments. Its analysis, as set forth in *Konvalinka I*, sheds necessary light on the issues now before us.

> In October 2005, [the Hospital] entered into a [CIA] and a
> Settlement Agreement with the [OIG] . . . . [The Hospital] also

at this time entered into a Settlement Agreement with the State of Tennessee. The CIA requires heightened internal scrutiny and investigation of potential problems, detailed reporting of the results of these investigations to OIG, and the detailed notification of OIG of any "investigation or legal proceeding ... brought by a governmental entity ... involving an allegation that Erlanger has committed a crime or had engaged in fraudulent activities."

\* \* \*

Under the CIA, [the Hospital] is required to form a Compliance Committee to monitor compliance with the CIA and report directly to the OIG, as well as establish a Disclosure Program to allow for employee disclosure of potential issues with or questions about [the Hospital's] compliance with civil, criminal or administrative law. . . . The CIA required Erlanger to create a Code of Conduct setting forth, among other things, "the requirement that all of [Erlanger's officers, directors, agents and employees] shall be expected to report to the Compliance Officer . . . suspected violations of any Federal health care program requirements or of Erlanger's own Policies and Procedures." Likewise, the Code of Conduct had to contain a "commitment to nonretaliation and to maintain, as appropriate, *confidentiality and anonymity with respect to such disclosures*." . . . (emphasis added).

The Disclosure Program under the CIA had to allow for a mechanism through which individuals could report, with an expectation of anonymity and confidentiality, any potential violations of law. . . . Like the Compliance Committee's Code of Conduct, the Disclosure Program had to emphasize the protection of "anonymous communications for which *appropriate confidentiality shall be maintained*." (emphasis added). These anonymous and confidential reports, once received via the Disclosure Program, were given to the Compliance Officer. The Compliance Officer is required under the CIA to perform an investigation of all such reports, and to keep a log containing the reports themselves along with "the

-4-

status of the respective internal reviews, and any corrective action taken. . . ."

The CIA also requires that Erlanger submit annual reports to OIG "with respect to the status of, and findings regarding, Erlanger's compliance activities. . . ." These reports must contain a variety of information, including a summary of "Reportable Events" (e.g. potential violations of law), and corrective action taken in response to a violation or other issue, a summary of the Disclosure Program's log, a summary of "any ongoing investigation or legal proceeding" against the hospital that it is required to report under the CIA. . . .

Under Tenn. Code Ann. § 10-7-503(a), "all state, county and municipal records . . . shall at all times . . . be open for personal inspection by any citizen of Tennessee, and those in charge of such records shall not refuse such right of inspection to any citizen, unless otherwise provided by state law." The statute does, however, limit its otherwise broad applicability with a number of exceptions for certain confidential records. One of the most pertinent exceptions in relation to this case provides that, "[a]ll investigative records of . . . the office of inspector general . . . shall be treated as confidential and shall not be open to inspection by members of the public. The information contained in such records shall be disclosed to the public only in compliance with a subpoena or an order of a court of record." Tenn. Code Ann. § 10-7-504(a)(2)(A).

[The Hospital] argues that this exception applies to the three records requests at issue here because [their] records were "generated, compiled and reported pursuant to the requirements of the CIA as part of the ongoing investigation by and settlement negotiations with the OIG." . . . [The Hospital] also asserts it was "performing investigative functions on behalf of and at the request of the OIG," and that the products of these investigative activities are clearly exempted from disclosure under the statute. . . . Petitioner, on the other hand, argues merely that this exception is inapplicable to the requested records in this case because [the Hospital] "cites no authority for its position that it

is now an agent of the OIG," and is therefore not entitled to confidentiality protections under the statute. . . .

***Konvalinka I***, at * 2-3  (quoting trial court, headings omitted, omission in original, some bracketed material added).  The trial court agreed with the Hospital and denied the Petitioner access to the Documents.

On appeal in ***Konvalinka I***, the

> Hospital argue[d] that the Trial Court was correct when it found that Tenn. Code Ann. § 50-7-504(a)(2)(A) protected the records from disclosure.  The Hospital further argue[d] that even if Tenn. Code Ann. § 50-7-504(a)(2)(A) d[id] not apply, the records nevertheless are protected from disclosure pursuant to Tenn. Code Ann. § 50-7-504(a)(5)(A) as well as applicable federal statutes and regulations.

***Konvalinka I*** at *5.  We disagreed with the Hospital with regard to the state statute, but remanded the federal aspect.  We stated as follows:

> Tenn. Code Ann. § 10-7-504(a)(2)(A) provides, in relevant part, as follows:
>
> All investigative records of . . . *the office of the inspector general* . . . shall be treated as confidential and shall not be open to inspection by members of the public.  The information contained in such records shall be disclosed to the public only in compliance with a subpoena or an order of a court of record. . . . (emphasis added).
>
> The issue as to whether the above quoted statute applies in this case depends on whether, as the Hospital claims, "the office of inspector general" includes or is referring to both the state and federal Office of Inspector Generals.  Petitioner claims that this statute only applies to the state Office of Inspector General, and because the Corporate Integrity Agreement was entered into between the Hospital and the federal Office of Inspector General, the statute simply has no bearing on this case.
>
> *   *   *

. . . . In short, we agree with Petitioner that the General Assembly was not referring to the federal Office of Inspector General in Tenn. Code Ann. § 10-7-504(a)(2)(A), and the decision of the Trial Court on this issue is reversed.

The next issue is whether the records are exempt from disclosure pursuant to Tenn. Code Ann. § 10-7-504(a)(5)(A). The relevant portion of this statute provides as follows:

(5)(A) The following books, records and other materials *in the possession of the office of the attorney general and reporter* which relate to any pending or contemplated legal or administrative proceeding in which the office of the attorney general and reporter may be involved shall not be open for public inspection:

(i) Books, records or other materials which are confidential or privileged by state law;

(ii) Books, records or other materials relating to investigations conducted by federal law enforcement or federal regulatory agencies, which are confidential or privileged under federal law . . . . (emphasis added).

On appeal, the Hospital acknowledges that the Tennessee Attorney General is not in physical possession of the requested documents. The Hospital argues, however, that "possession" does not necessarily mean physical possession. We need not decide if "in the possession" means more than actually physically possessing the documents because we conclude, at a minimum, that the clear language of the statute requires the Tennessee Attorney General to have actual physical possession of the documents in order for this exception to apply. Therefore, we conclude that Tenn. Code Ann. § 10-7-504(a)(5)(A) does not apply in this case.

Although we conclude that Tenn. Code Ann. §§ 10-7-504(a)(2)(A) and (a)(5)(A) do not prohibit disclosure of the requested documents, this does not end our inquiry. Although the Tennessee Attorney General was involved in this

case, the development of the Corporate Integrity Agreement was done through the federal Office of Inspector General. *The federal Office of Inspector General is certainly at liberty to provide that certain documents generated pursuant to the Corporate Integrity Agreement are confidential consistent with the provisions of the Freedom of Information Act and/or the regulations adopted by the Department of Health and Human Services.* The Office of Inspector General's ability to do that is not eliminated simply because the agreement is entered into with a state governmental entity such as the Hospital. In such a situation, federal law could very well prohibit disclosure of these documents even if state law does not.

The Hospital argues that the requested documents are protected from disclosure pursuant to exceptions contained in the Freedom of Information Act, 5 U.S.C. § 522(b), as well as regulations implemented by the Department of Health and Human Services addressing confidentiality of certain documents, including 45 C.F.R. §§ 5.65 and 5.68. The Trial Court never addressed whether the documents at issue in this case were confidential under federal law as that issue was rendered moot once the Trial Court concluded, incorrectly, that the documents were protected from disclosure under Tenn. Code Ann. § 10-7-504(a)(2)(A). Because these documents are not in the record before us, we cannot determine if they are confidential under applicable federal law. Therefore, we remand this case to the Trial Court for a determination as to whether all or any portions of the requested documents are protected from disclosure pursuant to either federal statute(s) or federal regulation(s).

***Konvalinka I*** at * 5 -7 (footnotes omitted, emphasis added).

The happenings on remand are accurately set out in the trial court's memorandum and order wherein it ordered the Hospital to produce the documents subject only to redactions necessary to protect the identity of persons making reports under the Disclosure Program:

On November 20, 2009, the Hospital filed its Answer to Petition for Access to Public Record, in which . . . [f]or the first time the Hospital asserted additional state law grounds as follows:

> The records requested in the Petition are confidential and protected from disclosure under Tennessee law, including but not limited to the:
> (a) Tennessee Peer Review Law of 1967, Tenn. Code Ann. § 63-6-219;
> (b) Tennessee Uniform Trade Secrets Act, 47-25-1701, et seq.;
> (c) Deliberative Process Privilege;
> (d) Self-Evaluative Privilege;
> (e) Attorney-Client Privilege; and
> (f) Work-Product Doctrine.

Also, on November 20, 2009, the Hospital filed its Renewed Motion for Protective Order and Amended Response to Motion to Compel in which the Hospital seeks to rely on the new state law defenses included in its Answer to Petition for Access to Public Record[s]. On November 25, 2009, [the P]etitioner filed a Response to Motion for Protective Order and Amended Response to Motion to Compel in which he asserts that the Court of Appeals remanded the matter solely for this Court to make a determination whether federal law precludes disclosure of the documents. On December 1, 2009, the Court conducted a hearing on the case, and sustained the position of [theP]etitioner. The Court excluded the testimony of witnesses based on state law claims, but permitted the Hospital to take the depositions of the excluded witnesses out of the presence of the Court for consideration in the event of an appeal.

After having determined that issues under the remand were limited, the hearing continued for the Hospital to present evidence and law to support its claims based on federal law and federal regulations. The Hospital offered the testimony of Alana Sullivan, Vice President and Chief Compliance Officer of the Hospital, and the testimony of Howard Young, who formerly worked for the Department of Health and Human Services OIG, . . . concerning the federal regulation bearing on the Corporate Integrity Agreement between the Hospital and the OIG. At the conclusion of the hearing on December 1, 2009, the Court took the matter under advisement.

On December 22, 2009, the Hospital filed Respondent's Motion for Reconsideration again asking the Court to consider the state law grounds presented in its Renewed Motion for Protective Order. On January 8, 2010, [theP]etitioner filed Petitioner's Response to Motion for Reconsideration objecting to expanding the scope of the hearing on remand. This Court assumes that the Court of Appeals would have addressed all state law claims that were asserted on appeal. The state law claims asserted in the Hospital's Renewed Motion for Protective Order were first asserted in the trial court more than three months after the Mandate from the Court of Appeals was filed and 18 months after suit was filed. The legislature has set out the procedure to be followed by Chancery Court when judicial review of actions denying access to public records is requested in Tenn. Code Ann. § 10-7-505(b):

> Upon the filing of the petition, the court shall, upon request of the petitioning party, issue an order requiring the defendant or respondent party or parties to immediately appear and show cause, if they have any, why the petition should not be granted. A formal written response to the petition shall not be required, and the generally applicable periods of filing such response shall not apply in the interest of expeditious hearings. The court may direct that the records being sought be submitted under seal for review by the court and no other party. The decision of the court on the petition shall constitute a final judgment on the merits.

This provision seems to contemplate that any, and all, grounds for refusing access to public records will be promptly addressed by the Court at the show cause hearing. Based upon the Opinion and Judgment of the Court of Appeals, and Tenn. Code Ann. § 10-7-505, the Court finds that the Respondent's Motion for Reconsideration should be denied.

The Court of Appeals noted that the federal Office of Inspector General could provide that certain documents generated

-10-

pursuant to the [CIA] are confidential, and that in such a case, federal law could prohibit disclosure of the documents even if state law did not. The Hospital's post-hearing brief . . . states:

> According to the CIA, not only should the identity of those who make disclosures be kept confidential, but also the disclosures themselves must be treated with confidentiality as appropriate. . . (emphasis added).

While the cited section of the [CIA] specifically addresses confidentiality of persons making reports of violations of any Federal health care program or the Hospital's own Policies and Procedures, it does not state that the disclosures are confidential. The Court finds that the CIA requires the Hospital to establish a system that protects the anonymity of the individual making a report of an alleged violation, but it does not require that the report itself be kept confidential.

The CIA does have a provision allowing the Hospital to designate certain information gathered for the OIG as confidential.

> Designation of Information. Erlanger shall clearly identify any portions of its submissions that it believes are trade secrets, or information that is commercial or financial and privileged or confidential, and therefore potentially exempt from disclosure under the Freedom of Information Act (FOIA), 5 U.S.C. § 552. Erlanger shall refrain from identifying any information as exempt from disclosure if the information does not meet the criteria for exemption from disclosure under FOIA.

. . . The Hospital did not mark any documents gathered for the OIG as "confidential" until some time after this lawsuit commenced, according to Alana Sullivan, the Hospital's Chief Compliance Officer.

-11-

\* \* \*

Failure to designate any documents provided to the OIG as confidential under the FOIA weakens the Hospital's claim that the documents requested by petitioner are confidential under federal law. The Hospital relies on the holding in ***Hersh & Hersh v. U.S. Dept. of Health and Human Services***, 2008 WL 901539 (N.D. Cal.) for its assertion that federal law precludes disclosure of the information generated pursuant to the CIA. . . . . In holding that certain requested documents could not be disclosed, the ***Hersh*** court noted that the documents at issue were produced pursuant to a CIA entered into with the OIG and that the Director of Global Compliance of the producing party had "expressly notified OIG that the documents submitted were confidential and subject to exemption under FOIA." In the case before this Court, the Hospital had failed to identify to the OIG any documents "it believes are trade secrets, or information that is commercial or financial and privileged or confidential and therefore potentially exempt from disclosure . . . ."

\* \* \*

In the present case, the CIA requires the Hospital to create a "disclosure program" that will maintain the anonymity of persons reporting potential violations of federal health laws by the Hospital to prevent retribution or retaliation for making a report. The Hospital is required to maintain a "disclosure log" of each disclosure, whether anonymous or not, that shall be made available to the OIG. . . . . Disclosure of any information that might compromise the identity of those persons reporting potential violations would violate the terms of the CIA and impair the OIG's ability to obtain necessary information in the future, therefore, the Hospital must redact any such identifying information from the documents requested by petitioner. The Hospital has failed to demonstrate any other basis under federal law to withhold the requested documents.

The Hospital has appealed.

-12-

II.

The issues on appeal are:

Whether the trial court erred when it refused to consider the additional state law defenses on remand.

Whether the trial court erred in its determination that the records are not rendered confidential under federal law.

Whether the trial court erred in admitting and considering the Hospital's expert testimony concerning the confidentiality of Documents.

Whether the trial court erred in not awarding Petitioner his attorney's fees and expenses.

III.

The issue of whether this Court's judgment in **Konvalinka I** precludes the Hospital from raising new state law defenses is a question of law. *See* **Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.**, 249 S.W.3d 346, 356 & n.19 (Tenn. 2008). We review questions of law *de novo*, with no presumption of correctness. **Southern Constructors, Inc. v. Loudon County Bd. of Educ.**, 58 S.W.3d 706, 710 (Tenn. 2001). The application of state and federal statutes and regulations to the facts of this case to determine whether the Documents are exempt from disclosure also involves questions of law. **Memphis Publishing Co. v. Cherokee Children & Family Serv's.**, 87 S.W.3d 67, 74 (Tenn. 2002).

IV.

A.

We begin with the issue of whether the trial court erred in refusing to allow the Hospital to assert new state law defenses to production on remand. We conclude that it did not err in limiting the issue on remand solely to the one we identified in our opinion, *i.e.*, whether there was a basis in federal law for denying production of the Documents.

The Hospital argues that since we did not explicitly articulate that the "sole" issue for consideration on remand was whether federal law prevented disclosure of the Documents, it was free to assert any ground not explicitly asserted and rejected previously by the trial

court. The Hospital likens this case to **Crafton v. Van den Bosch**, 196 S.W.3d 767, 771 (Tenn. Ct. App. 2005). Unfortunately for the Hospital, **Crafton** does not involve a public records petition. In **Crafton**, a client (Mr. Crafton) had sued his former attorney for malpractice. The attorney (Mr. Van den Bosch) filed a motion for summary judgment, which the trial court denied. **Id**. at 769. We accepted an interlocutory appeal by the attorney on the issue of whether the trial court had erred in denying summary judgment. **Id**. We affirmed the trial court and remanded for further proceedings. **Id**. On remand, the attorney filed a motion for summary judgment that asserted the action was barred by the statute of limitations. **Id**. The trial court granted summary judgment and dismissed the case. On appeal, the client argued that the trial court should not have even considered the motion, summary judgment having once been requested, denied, and affirmed. **Id**. at 771. We observed that had the attorney "simply re-filed the Original Motion for Summary Judgment upon remand, this Court would likely be of the opinion that same was *res judicata* based upon our holding in [the first appeal]." **Id**. However, "[s]ince the statute of limitations issue was neither raised in the original appeal . . . nor discussed in this Court's opinion," there was nothing to prevent consideration of the statute of limitations defense on remand. **Id**. The Hospital characterizes the first proceedings which resulted in the order appealed in **Konvalinka I**, as simply a dispositive motion, with full consideration of the merits available on remand as in **Crafton**.

There is an important distinction between this public records case and the routine motion for summary judgment. Summary judgment has been recognized as an important procedural mechanism for disposing of "all or any part" of a case that does not involve a "genuine issue as to any material fact." Tenn. R. Civ. P. 56 (Advisory Comment); **Byrd v. Hall**, 847 S.W. 2d 208, 210, 215-16 (Tenn. 1993). Rule 56 in fact recognizes that some summary judgments are "interlocutory in character," for example, when there is a determination that there is no genuine issue of material fact about liability even though there may be such an issue about damages. Tenn. R. Civ. P. 56.04. The absence of a genuine issue of material fact as to any one element of a claim renders the other elements moot. **Byrd**, 847 S.W.2d at 215 n.5. To hold that a litigant who loses his or her summary judgment on appeal cannot asset new grounds for summary judgment on remand would be to rewrite the law of summary judgment as we know it.

On the other hand, the legislature has made it clear to us that a party resisting requests for public documents cannot assert its defenses piecemeal. By statute, the burden of proof is placed upon the opponent of production to show "justification for the nondisclosure . . . by a preponderance of the evidence." Tenn. Code Ann. § 10-7-505(c). The trial court is directed by statute what it must do once a petition for production of documents is filed; "the court *shall*, upon request of the petitioning party, *issue an order requiring the defendant* or respondent party or parties *to immediately appear and show cause, if they have any, why the*

*petition should not be granted*." Tenn. Code Ann. § 10-7-505(b)(emphasis added). The statute dispenses with the need for an answer. *Id*. The opponent of the petition may simply appear and present its defenses. "The decision of the court on the petition shall constitute a final judgment on the merits." *Id*. Further, all courts are directed to construe the statute "broadly . . . so as to give the fullest possible public access to public records." Tenn. Code Ann. § 10-7-505(d). Unlike a summary judgment that may be granted on the basis of one missing element, or one affirmative defense, *Hannan v. Alltel Publishing Co.*, 270 S.W.3d 1, 9 (Tenn. 2008), the judgment rendered on a records request necessarily encompasses "*any*" defense the party opposing production may "have" as to why the "petition should not be granted." It would not promote public access for us to hold that an opponent to production may piecemeal its defenses, raising a new one each time it loses an appeal.

The Hospital acknowledges the general rule that a trial court must follow the mandate of an appellate court on remand. *See Silvey v. Silvey*, No. E2003-00586-COA-R3-CV, 2004 WL 508481(Tenn. Ct. App. E.S., filed March 16, 2004). However, the Hospital tries to limit the general rule with the proviso that the mandate "is controlling as regards matters 'within its compass, but on the remand a lower court is free as regards other issues.' " *State v. Williams*, 52 S.W.3d 109, 123 (Tenn. Crim. App. 2001). We will take the Hospital's assertion at face value because it is clear to us that these new defenses were "within [the] compass" of our holding in *Konvalinka I*. The trial court's order being appealed in *Konvalinka I* must be viewed as a final judgment on the merits concerning any "justification for . . . nondisclosure" the Hospital could muster. Our judgment on appeal, then, precludes any defense that could have been raised in the trial court or on appeal other than the single issue we directed the trial court to consider, namely, "whether all or any portions of the requested documents are protected from disclosure pursuant to either federal statute(s) or federal regulations(s)." *Konvalinka* I at *7.

The Hospital raises the inventive argument that it has new evidence, therefore our mandate in *Konvalinka I* does not restrict the proceedings on remand. *See Memphis Publishing Co. v. Tennessee Petroleum*, 975 S.W.2d 303, 306 (Tenn. 1998)(listing exception to "law of the case" doctrine to include different evidence). We understand that sometimes a party may discover new evidence that may change the complexion of a case from one hearing to the next, but we do not believe that common sense notion has any application to the facts of this case. Here, the Hospital simply expanded the number of grounds for treating the documents confidential, and proceeded on remand to gather evidence in support of those new grounds. If a party could avoid *res judicata* or application of law of the case by simply thinking up new claims or defenses and then procuring evidence in support of those claims or defenses, we are not sure either doctrine would ever be applicable. We see no merit to this argument. Accordingly, we hold that the trial court did not err in rejecting the Hospital's new "justification[s] for the nondisclosure" on remand.

-15-

B.

We will now consider the issue of whether the trail court erred in holding that federal law did not prevent disclosure of the Documents. The essence of the trial court's holding was that the Hospital proved that federal law protects the identity of persons making disclosures under the "Disclosure Program" but that it did not show any basis in federal law for protecting the content of the disclosures. On appeal the Hospital is unable to point to any federal statute or regulation that explicitly makes the Documents confidential. By the proof in this case, the CIA is the document that controls the relationship between the Hospital and the federal government, whose face is the OIG. The OIG persuaded the Hospital, on threat of excluding it from participation in Medicare and Medicaid programs, to execute the CIA. The CIA is essentially a form document whose terms are dictated by the OIG. The written terms of the CIA constitute the full and complete agreement between the Hospital and the OIG. The disclosure program, the Compliance Committee, the Compliance Officer, and the Documents, are all a product of the CIA. Any claim to protection of the Documents from public disclosure under federal law thus stands or falls on the terms of the CIA.

The CIA belies the Hospital's position that the program embodied in the CIA will not work without a broad veil of secrecy. The term "confidential" is only used three times in the 39-page CIA. The first use of the term pertains to the Hospital's obligation to establish a written code of conduct which sets forth the right of individuals to disclose illegal or questionable conduct and the Hospital's "commitment to nonretaliation and to maintain, as appropriate, confidentiality and anonymity with respect to such disclosures." The second use of the term is much like the first in that it affords protection to persons making disclosures: "The Disclosure Program shall emphasize a nonretribution, nonretaliation policy, and shall include a reporting mechanism for anonymous communications for which appropriate confidentiality shall be maintained." The final use of the term gives the Hospital the right to mark documents that it submits to the OIG as "trade secrets, or information that is commercial or financial and privileged or confidential . . . ." If the Hospital makes the appropriate designation, then the OIG will "notify Erlanger prior to any release" of documents so designated. Our review of the record confirms the trial court's finding, a telling one at that, that the Hospital did not designate any of the Documents submitted to the OIG as confidential until after the Petitioner requested them. The court stated that "[f]ailure to designate any documents provided to the OIG as confidential under the FOIA weakens the Hospital's claim that the documents requested by the [P]etitioner are confidential under federal law."

The Hospital relies upon *Hersh & Hersh v. U.S. Dep't of Health & Human Serv's*, No. C 06-4234 PJH, 2008 WL 901539 (N.D. Cal., filed March 31, 2008), for the proposition that the Documents must be treated as confidential. *Hersh* did recognize that material is

confidential "for purposes of FOIA if disclosure of the information is likely to . . . impair the Government's ability to obtain necessary information in the future." *Id.* at \*5 (*citing GC Micro Corp. v. Defense Logistics Agency*, 33 F.3d 1109,1112 (9th Cir. 1994), and *National Parks v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1974)). *Hersch* applied the stated rule to the context of a FOIA request for documents submitted to the OIG by a hospital operating under a corporate integrity agreement with the OIG. The trial court in *Hersch* concluded that "disclosure of [the hospital's] documents here would impair the government's ability to secure voluntary execution of [corporate integrity agreements] in the future." *Id*. at 6. The two witnesses who testified for the Hospital stated an opinion that disclosure of the Documents would hamper the OIG's ability to secure voluntary execution of similar agreements.

There is a critical difference between the present case and *Hersch*. The person in *Hersch* who submitted the hospital's documents to the OIG "expressly notified OIG that the documents submitted were confidential and subject to exemption under FOIA." 2008 WL 901539 at \*6. One of Erlanger's witnesses in the present case testified that CIAs contain standardized language, much of which he authored. The language in the CIA before us expressly conditions Erlanger's right to expect FOIA protection for a document upon its marking the document as confidential when it is submitted:

> Consistent with HHS's FOIA procedures, set forth in 45 C.F.R. Part 5, OIG shall make a reasonable effort to notify Erlanger prior to any release by OIG of information submitted by Erlanger pursuant to its obligations under this CIA and identified upon submission by Erlanger as trade secrets, or information that is commercial or financial and privileged or confidential, under the FOIA rules.

The Hospital's representative admitted that she did not mark any documents submitted to the OIG as confidential until after the Petitioner filed his petition. It cannot be said that the failure is inadvertent as the Hospital's representative testified that, contrary to the language of the CIA, the claim of privilege can be made any time prior to the disclosure by the OIG. The trial court understood and discussed the distinction between the present case and *Hersch*. As we see it, the outcome in this case will not have the chilling effect nationwide that the Hospital asserts because other hospitals can avoid the result in this case by carefully reading its CIA and asserting any claims of confidentiality contemporaneously with its submissions to the OIG. Accordingly, we hold there was no error in the trial court's holding that federal law does not protect the Documents from disclosure.

C.

The Petitioner raises two issues of his own. He argues that the trial court erred in admitting the testimony of attorney Howard Young because Young offered only inadmissible legal opinions and conclusions. The trial court held in favor of the Petitioner despite the testimony of Young, and we have affirmed the trial court in its holding that the Documents are not privileged. Thus, even if the trial court erred, the error was harmless. Tenn. R. App. P. 36(b). We will not address the merits of the issue.

D.

The Petitioner also raises the issue of whether the trial court erred in refusing to award his reasonable attorney's fees and costs incurred in securing the documents. The legal basis for an award of attorney fees is Tenn. Code Ann. § 10-7-505(g) which states:

> If the court finds that the governmental entity, or agent thereof, refusing to disclose a record, knew that such record was public and willfully refused to disclose it, such court may, in its discretion, assess all reasonable costs involved in obtaining the records, including reasonable attorneys' fees, against the nondisclosing governmental entity.

Since the trial court is given discretion, we review for an abuse of discretion. ***Henderson v. City of Chattanooga***, 133 S.W.3d 192, 215-16 (Tenn. Ct. App. 2003). Not every wrongful withholding of records will justify an award of attorney's fees; the statute contemplates conduct rising to the level of "wrong because of a dishonest purpose." ***Id***. at 216. Even though we have held that the Hospital must produce the Documents, we cannot say that it was totally without a legitimate purpose or arguable law and facts to support its opposition. There was no abuse of discretion by the trial court in denying the Petitioner's request for attorney's fees.

V.

The judgment of the trial court is affirmed in all respects. Costs on appeal are taxed to the appellant, Chattanooga-Hamilton County Hospital Authority. This case is remanded, pursuant to applicable law, for such further proceedings as are necessary.

_____
CHARLES D. SUSANO, JR., JUDGE

-18-