IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 10, 2015 Session

## ANDREW C. CLARKE v. CITY OF MEMPHIS

**Appeal from the Chancery Court for Shelby County**
**No. CH13033371     Walter L. Evans, Chancellor**

_____

**No. W2014-00602-COA-R3-CV – Filed July 23, 2015**
_____

This appeal stems from a public records dispute, pursuant to the Tennessee Public Records Act, Tennessee Code Annotated § 10-7-101 et seq., litigated in the Shelby County Chancery Court. The trial court awarded Appellee/Cross-Appellant $3,500.00 in attorneys' fees and costs due to the City of Memphis' ("the City") failure to timely respond to Appellee/Cross-Appellant's open records request. The City appealed concerning the propriety of the award of attorneys' fees. Appellee/Cross-Appellant cross-appealed concerning the amount of the fees awarded and additionally prayed for an award of attorneys' fees on appeal. Although we conclude that Appellee/Cross-Appellant is entitled to attorneys' fees, we modify the amount awarded from $3,500.00 to $2,340.00. Further, we deny Appellee/Cross-Appellant's request for attorneys' fees on appeal.

**Tenn. R. App. P. 3 Appeal as of Right: Judgment of the Chancery Court Affirmed**
**as Modified and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY ARMSTRONG, J., joined.

Allan J. Wade, and Brandy S. Parrish, Memphis, Tennessee, for the appellant The City of Memphis.

Andrew Clarke, Memphis, Tennessee, Pro Se.

## OPINION

### I.       Background and Procedural History

On February 15, 2013, Andrew C. Clarke ("Mr. Clarke"), a Memphis attorney, wrote a letter to Senior Assistant City Attorney Chandell Ryan ("Ms. Ryan") seeking "to inspect and potentially copy any and all documents provided to and/or received by the City of Memphis and the Memphis Police Department as a result of the Police Oversight Committee established by Mayor Wharton." Mr. Clarke's letter indicated that his request was made pursuant to the authority in the Tennessee Public Records Act ("TPRA" or the "Act"), and he noted that his request included, but was not limited to, "all contracts, documents, payments, reports, [and] notes provided to and/or received from the City of Memphis, Bill Garrett, Bishop Mays[,] and Reverend Keith Norman pertaining to [the] evaluation and oversight committee from any source whatsoever." Although Tennessee Code Annotated § 10-7-503(a)(2)(B) required the City to respond to Mr. Clarke's records request within seven business days, Mr. Clarke did not receive a timely response.

Given the absence of a response, Mr. Clarke contacted the City again on February 27, 2013, to inquire into the status of his February 15 request. When still no response to his records request was forthcoming, Mr. Clarke contacted the City once more on March 6, 2013. Mr. Clarke's March 6 email stated that if the requested records were not made available for inspection immediately, he would have no option but to file a petition for access and to "seek appropriate attorney fees."

On March 7, 2013, Mr. Clarke commenced the present action by filing a petition for judicial review in the Shelby County Chancery Court. In addition to seeking access to the requested public records, Mr. Clarke prayed that he be awarded reasonable costs and attorneys' fees pursuant to the authority in Tennessee Code Annotated § 10-7-505(g). On March 8, 2013, Ms. Ryan emailed Mr. Clarke and acknowledged that the City was in receipt of his public records request. Ms. Ryan's email stated that additional time was needed to process Mr. Clarke's request, and she informed him that he could "expect a follow up or any applicable records by March 22, 2013." On March 22, 2013, Ms. Ryan contacted Mr. Clarke again and stated that the City still needed more time. She informed him that he could expect a response by March 25, 2013. By letter dated March 25, 2013, Mr. Clarke finally received the City's response to his public records request. In pertinent part, the City's response stated as follows:

> We are in receipt of the enclosed request for public records. It appears that your request is the subject of pending litigation involving your client and the City of Memphis in the matter of *Iris Wright v. City of Memphis*. As this matter involves current litigation, it is subject to the rules of discovery under the Tennessee Rules of Civil Procedure.

2

\* \* \* \*

> In an effort to ensure compliance with both the Tennessee Open Records
> Act and the Tennessee Rules of Civil Procedure, please process your
> request through the discovery process as part of the aforementioned
> litigation.

On the same day that he received the City's response, Mr. Clarke emailed Ms. Ryan to advise her that the basis for the City's objection was not supported by existing law. In particular, he quoted the Tennessee Supreme Court's decision in *Konvalinka v. Chattanooga-Hamilton County Hospital Authority*, which in part, states as follows:

> It may very well be that the General Assembly neither intended nor
> anticipated that the public records statutes they enacted would be used by
> persons litigating with government entities to obtain records that might not
> be as readily available through the rules of discovery. However, at present,
> neither the discovery rules nor the public records statutes expressly limit or
> prevent persons who are in litigation with a government entity or who are
> considering litigation with a government entity from filing petitions under
> Tenn. Code Ann. § 10–7–505(a) seeking access to public records relevant
> to the litigation. A growing number of courts, construing public records
> statutes similar to ours, have decided that persons should not be denied
> access to public records solely because they are involved, or may be
> involved, in litigation with a governmental entity.

*Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 360-61 (Tenn. 2008) (internal citation omitted).[1] Mr. Clarke contacted the City again on March 26, 2013, by sending an email to Deputy City Attorney Regina Newman ("Ms. Newman"). In his email to Ms. Newman, Mr. Clarke asked the City to reconsider its position in light of the *Konvalinka* case.

On March 27, 2013, Mr. Clarke filed an amended petition for judicial review and access in the trial court. The amended petition outlined the history of the communication between the parties regarding Mr. Clarke's public records request and specifically averred that the City's March 25, 2013, response was not proper based on the applicable law. Like Mr. Clarke's original petition, the amended petition sought access to the requested documents and prayed for an award of reasonable costs and attorneys' fees pursuant to Tennessee Code Annotated § 10-7-505(g). Following the filing of the

---

[1] In addition to referencing the *Konvalinka* opinion, Mr. Clarke's email informed the City that the same arguments it used in objecting to this request had previously been addressed and rejected in another case against the City by a prior Shelby County Chancery Court decision several years earlier. The email stated that a copy of the order from this prior Chancery Court case was included as an attachment.

amended petition, efforts were made by counsel for both parties to set the case for a hearing. The matter was eventually set to be heard on August 15, 2013.

Prior to the hearing, the City filed an answer to Mr. Clarke's amended petition. Moreover, by letter dated August 13, 2013, Assistant City Attorney Maya Siggers ("Ms. Siggers") provided Mr. Clarke with an updated response concerning his public records request. As before, the City maintained that it would not provide any records pertaining to matters that were the subject of pending litigation. The City also stated that it did not have any records related to a "Police Oversight Committee" because such a committee had not been established. Nevertheless, Ms. Siggers informed Mr. Clarke that some records would be made available for his inspection beginning on August 14, 2013. Specifically, the letter stated that "[c]ontracts, documents and reports provided to Bill Garrett, Bishop Mays and Reverend Keith Norman are available for review[.]"

On August 15, 2013, the hearing on Mr. Clarke's petition for judicial review took place as scheduled. Mr. Clarke was represented by counsel at the hearing. At the conclusion of the hearing, the Chancellor made the following oral remarks:

> Let me say this. It's without dispute that the City did not respond to the numerous efforts of Mr. Clarke to receive a response from the City regarding his request for information under the open meetings [sic] law. It would appear to the Court that the refusal or the non-response by the City of the request is the moving factor that required Mr. Clarke to file his petition and amended petition for access to public records that he was seeking, although it appears to the Court that the City has filed affidavits from Ms. Patrice Thomas and Ms. Regina Newman relative to the substance of the request for access to those public records establishing that no such committee or records exist. What the Court is going to do is to determine that the City was, in fact, late in filing a response to the open meetings [sic] law, but the Court will reserve for future determination as to what sanction in the way of attorney fees or otherwise will be appropriate for such delay.

An order memorializing the substance of the Chancellor's comments was entered on January 16, 2014.[2] In pertinent part, the Chancellor's order stated that it "will reserve for future determination as to what sanction in the way of fees or otherwise will be appropriate for [the City's] delay."

On August 20, 2013, Mr. Clarke filed a motion for attorneys' fees and costs pursuant to the TPRA. In his motion, Mr. Clarke requested attorneys' fees in the amount of $11,685.00. The motion was supported by declarations from both himself and his

---

[2] In fact, we note that the Chancellor's oral ruling was specifically incorporated by reference.

attorney, Thomas Greer, attesting to the reasonableness of the fees requested. The record does not reflect that the City filed any response disputing the reasonableness of the Petitioner's attorneys' fees and costs. The trial court heard the motion on January 16, 2014. Although a transcript of that proceeding is not included in the record transmitted to us on appeal, the trial court did approve a statement of the evidence concerning the hearing. In describing the January 16 motion hearing, the statement of the evidence recited as follows:

> Regina Morrison Newman, Deputy City Attorney, testified for the City about the efforts made by her and the City Attorney's Office to improve the response time of the City to public records requests, since the issues arose with regard to Petitioner's request. Ms. Newman testified that since the dispute with Mr. Clarke arose, the City Attorney's office was charting the response times for all public records requests received by the City as evidenced by a chart prepared by the City Attorney's Office. This Chart was offered into evidence by the City during Regina Newman's testimony and admitted into evidence by the Court as Exhibit "1" to the hearing. Ms. Newman also testified that the facts and statements contained in her Affidavit were true and correct as of the date of the hearing; her affidavit was offered into evidence by the City during Regina Newman's testimony and admitted into evidence by the Court as Exhibit "2" to the hearing. Petitioner offered into evidence Declarations of Andrew C[.] Clarke and Thomas R. Greer relied on during Petitioner's statements to the Court, which were admitted into evidence by the Court as Exhibit "3" to the hearing.

On February 21, 2014, the trial court entered an order awarding Mr. Clarke a $3,500.00 judgment "for attorney fees and other discretionary costs due to the failure of the City to timely respond to Petitioner's open records requests." This appeal subsequently ensued.

## II.    Issues Presented

On appeal, the City raises one issue for our review, stated as follows:

1. Whether the trial court abused its discretion by awarding Plaintiff Attorney's Fees?

Mr. Clarke's appellate brief raises two additional issues for our consideration, stated as follows:

1. The Trial Court erred by failing to provide Petitioner with all requested attorney fees.

2. Petitioner is entitled to attorney fees for work on the instant appeal.

### III.    Discussion

Under the TPRA, attorneys' fees are available pursuant to the terms outlined in Tennessee Code Annotated § 10-7-505(g).  In pertinent part, that section provides as follows:

> If the court finds that the governmental entity, or agent thereof, refusing to disclose a record, knew that such record was public and *willfully* refused to disclose it, such court may, in its discretion, assess all reasonable costs involved in obtaining the record, including reasonable attorneys' fees, against the nondisclosing governmental entity.

Tenn. Code Ann. § 10-7-505(g) (2012) (emphasis added).  By its terms, the attorneys' fee provision is "a limited award provision."  *Memphis Publ'g Co. v. City of Memphis*, 871 S.W.2d 681, 689 (Tenn. 1994) (citing *Abernathy v. Whitley*, 838 S.W.2d 211 (Tenn. Ct. App. 1992)).  Because the award of attorneys' fees is within the discretion of the trial court, we review the trial court's actions for an abuse of discretion.  *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 358 S.W.3d 213, 226 (Tenn. Ct. App. 2010) (citing *Henderson v. City of Chattanooga*, 133 S.W.3d 192, 215-16 (Tenn. Ct. App. 2003)).

As is evident from the statute, the Act provides that attorneys' fees may be awarded only if the trial court finds that the governmental entity, or agent thereof, acted willfully in refusing to disclose public records.  Tenn. Code Ann. § 10-7-505(g) (2012).  We recently discussed the standard required for willfulness under the TPRA in *Friedmann v. Marshall County*, No. M2014-01413-COA-R3-CV (Tenn. Ct. App. June 24, 2015).  Although in *Friedmann* we acknowledged that varying judicial statements had been made on the topic, we stressed that willfulness should be measured "in terms of the relative worth of the legal justification cited by a municipality to refuse access to records."  *Friedmann v. Marshall Cnty.*, No. M2014-01413-COA-R3-CV, slip op. at 13 (Tenn. Ct. App. June 24, 2015).  In other words, the determination of willfulness "should focus on whether there is an absence of good faith with respect to the legal position a municipality relies on in support of its refusal of records."  *Id.* at 12.

In *The Tennessean v. City of Lebanon*, this Court explained that courts employ the following analysis in assessing willfulness:

> Th[e] analysis emphasizes the component of the statutory standard that the entity or its officials know that the record sought is public and subject to disclosure. It evaluates the validity of the refusing entity's legal position supporting its refusal; critical to that determination is an evaluation of the clarity, or lack thereof, of the law on the issue involved.

6

*The Tennessean v. City of Lebanon*, No. M2002-02078-COA-R3-CV, 2004 WL 290705, at \*9 (Tenn. Ct. App. Feb. 13, 2004). If a municipality denies access to records by invoking a legal position that is not supported by existing law or by a good faith argument for the modification of existing law, the circumstances of the case will likely warrant a finding of willfulness. The Tennessee Supreme Court's decision in *Schneider v. City of Jackson* aptly demonstrates this principle. In *Schneider*, newspaper reporters with *The Jackson Sun* sought access to field interview cards generated by police officers employed by the City of Jackson. *Schneider v. City of Jackson*, 226 S.W.3d 332, 334-35 (Tenn. 2007). When no response to the reporters' public records request was forthcoming, a petition for access was filed in the Madison County Chancery Court. *Id.* at 335-36. In answering the petition, the City of Jackson alleged that the field interview cards were "'privileged documents'" because they "concerned 'police tactics on investigations.'" *Id.* at 336. The trial court rejected this argument and held that Tennessee law did not recognize the law enforcement privilege as an exception to the TPRA. *Id.* at 338. Although this Court reversed the trial court and adopted the law enforcement privilege as an available exception to public records requests, *id.* at 339, the Supreme Court granted permission to appeal and ultimately held that the law enforcement privilege did not exist. *Id.* at 344. In its analysis of whether the reporters were entitled to attorneys' fees under the TPRA, the *Schneider* court appeared to focus on the validity of the legal position that the City of Jackson relied on in support of its refusal of the requested records. The Court stated:

> We conclude that the record supports the trial court's determination that Petitioners are entitled to recover attorneys' fees and the trial court's award of attorneys' fees. Petitioners requested the field interview cards on two occasions, yet the City never reviewed the cards. Rather, the City maintained that the field interview cards were exempt "period," pursuant to a common law privilege that had neither been adopted in Tennessee nor even mentioned in a Tennessee case, and which had been implicitly rejected in *Holt*. Moreover, the City asserted the law enforcement privilege as if it were a blanket privilege, yet the Court of Appeals, and other jurisdictions in which it is applied, emphasize that the law enforcement privilege is a qualified privilege and does not under any circumstances provide blanket protection to governmental records. Thus, recognizing that at least a portion of the field interview cards were subject to disclosure would not have required the City "to foretell an uncertain juridical future." The record supports the trial court's finding [that] the City willfully refused to disclose the field interview cards.

*Id.* at 347 (internal citations omitted). In short, the analysis in *Schneider* indicates that an award of attorneys' fees will be warranted under the TPRA when a municipality denies a records request by invoking a legal argument that has no good faith basis in light of existing law.

**Propriety of a Fee Award**

Although the trial court exercised its discretion to award Mr. Clarke attorneys' fees in this case, we observe that the Chancellor's February 21, 2014, order is devoid of any reference to the City's willfulness, a standard that we have previously equated to an absence of good faith in the legal position used to support a denial of requested records. *See Friedmann*, slip op. at 12. Pursuant to Tennessee Rule of Civil Procedure 52.01, in all actions tried upon the facts without a jury, "the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." Tenn. R. Civ. P. 52.01. Despite the Chancellor's failure to make the specific finding of willfulness that is required to support an award of attorneys' fees pursuant to the TPRA, we have conducted our own independent review of the record to determine if the evidence presented at trial would support a finding that the City acted willfully. *See Pandey v. Shrivastava*, No. W2012-00059-COA-R3-CV, 2013 WL 657799, at *5 (Tenn. Ct. App. Feb. 22, 2013) (citation omitted) (noting that, on occasion, the appellate court may "soldier on" despite the absence of findings of fact and conclusions of law when the case involves only a clear legal issue or when the court's decision is readily ascertainable).

In considering the facts presented in the record, we conclude that the evidence supports a finding that the City acted willfully in this case. As noted, when the City finally responded to Mr. Clarke's public records request on March 25, 2013, it indicated that it would not process his request, but instead directed Mr. Clarke to pursue access to the requested records via the discovery process in other pending litigation. We note that the City's March 25 correspondence did not claim that any of the requested records were specifically exempt from inspection by either the TPRA or other applicable law. Rather, the City's response merely stated that Mr. Clarke's records request should be pursued in connection with the civil discovery process. Although Mr. Clarke subsequently informed the City that its objection was not a proper one, no records were made readily available. It was not until the eve of the hearing in this case—a date nearly six months after his February 2013 records request—that the City made some records available for Mr. Clarke's inspection.[3]

The City's initial objection in this case to Mr. Clarke's records request supports a finding that it acted willfully. Again, as the Tennessee Supreme Court commented in its 2008 *Konvalinka* decision:

> [A]t present, neither the discovery rules nor the public records statutes expressly limit or prevent persons who are in litigation with a government entity or who are considering litigation with a government entity from

---

[3] The hearing in this matter took place on August 15, 2013. By letter dated August 13, 2013, the City informed Mr. Clarke that certain records would be available for inspection beginning on August 14, 2013.

8

filing petitions under Tenn. Code Ann. § 10-7-505(a) seeking access to public records relevant to the litigation. A growing number of courts, construing public records statutes similar to ours, have decided that persons should not be denied access to public records solely because they are involved, or may be involved, in litigation with a governmental entity.

*Konvalinka*, 249 S.W.3d at 360-61.[4] Here, the City's March 25 response does not articulate a valid legal reason as to why Mr. Clarke's records request cannot be entertained. We know of nothing in the rules of discovery or the TPRA that would deny a citizen the right to make a public records request *simply* because that citizen is an attorney involved in litigation with the municipality. Certainly, the rules of discovery or other applicable law may circumscribe the ability of attorney-citizens to obtain records under certain circumstances, *see Swift v. Campbell*, 159 S.W.3d 565, 576 (Tenn. Ct. App. 2004) ("The clear public policy of Tennessee, reflected in Tenn. Code Ann. § 40-30-109(b), Tenn. S. Ct. R. 28, § 6(B)(3)(c), (C)(7), and Tenn. R. Crim. P. 16(a)(2), is that the documents described in Tenn. R. Crim. P. 16(a)(2) are not discoverable in either proceedings to which the Tennessee Rules of Criminal Procedure apply or separate proceedings under Tenn. Code Ann. § 10-7-505 as long as the criminal conviction associated with the records being sought is being collaterally attacked."), but there is no authority supporting a blanket prohibition. Moreover, as the *Konvalinka* court noted, a growing number of courts have expressly rejected such a proposition. *Konvalinka*, 249 S.W.3d at 361. In this case, the City failed to provide a specific legal reason as to why Mr. Clarke should be denied records, but instead relied upon a hypothesized general barrier to access. Similar to the Tennessee Supreme Court's holding in *Schneider*, we conclude that such reliance is willful in light of existing law. *See Schneider*, 226 S.W.3d at 347 (affirming a finding of willfulness when a municipality (1) relied upon a privilege that had not been adopted in Tennessee and had been implicitly rejected by other caselaw and (2) applied the privilege as if it were a blanket privilege, contrary to the application of the privilege in other jurisdictions where it had actually been adopted). Accordingly, we conclude that the record supports an award of attorneys' fees against the City.

### The Amount of Attorneys' Fees To Be Awarded

Although we have concluded that an award of attorneys' fees is appropriate in this case, we must now consider the reasonableness of the attorneys' fees awarded by the trial

---

[4] Although the *Konvalinka* court was specifically reviewing issues related to a civil contempt proceeding and accordingly stated that the appeal before it did "not provide an appropriate vehicle to determine whether persons who are in litigation with a governmental entity can be prevented from using the public records statutes to obtain information relevant to the litigation[,]" *Konvalinka*, 249 S.W.3d at 361, its comments regarding the TPRA are certainly pertinent to the present discussion. We note, as the *Konvalinka* court observed, that there is nothing in the TPRA or discovery rules imposing a general prohibition against a citizen from making a public records request just because that citizen is in litigation or contemplating litigation against a governmental entity.

court and the issues presented by Appellee's cross-appeal. In addition to asserting that the trial court erred by failing to provide him with all of his requested attorneys' fees, Mr. Clarke claims that he is entitled to attorneys' fees for work done on this appeal. We will first turn to the amount of the fee award ordered by the trial court.

In his August 20, 2013, motion for attorneys' fees, Mr. Clarke sought to recover a total of $11,685.00 in attorneys' fees. This amount, which was predicated on work performed by Mr. Clarke and his trial counsel, Attorney Thomas Greer, was supported by declarations attesting to the reasonableness of the fees requested. Whereas Mr. Clarke's declaration stated that he performed $9,345.00 in services in connection with his public records action, Attorney Greer's declaration attested to work performed in the amount of $2,340.00. These declarations were submitted into evidence at the January 16, 2014, hearing.

Although the trial court awarded $3,500.00 in attorneys' fees against the City, Mr. Clarke asserts that he is entitled to recover all of his requested fees due to the City's failure to file any response or submit any proof contesting the reasonableness or necessity of the amount requested. For the reasons discussed below, we conclude that Mr. Clarke is not entitled to any additional fees. As previously noted, Tennessee Code Annotated § 10-7-505(g) provides that a "court may, in its discretion, assess all reasonable **costs involved** in obtaining the record, **including reasonable attorneys' fees**, against the nondisclosing governmental entity." Tenn. Code Ann. § 10-7-505(g) (2012) (emphasis added). In construing this statute, as with any other, our goal is to give full effect to the General Assembly's purpose, "stopping just short of exceeding its intended scope." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 526 (Tenn. 2010) (citations omitted). Because "[w]e . . . construe statutes as we find them," *Waldschmidt v. Reassure Am. Life Ins. Co.*, 271 S.W.3d 173, 176 (Tenn. 2008), we "must . . . begin with the words that the General Assembly has chosen" and "give these words their natural and ordinary meaning." *Lee Med., Inc.*, 312 S.W.3d at 526 (citations omitted). We must presume that the General Assembly intended that each word be given full effect. *Waldschmidt*, 271 S.W.3d at 176.

Pursuant to the TPRA's attorneys' fees provision, "reasonable attorneys' fees" may be awarded if they are a "cost[] involved in obtaining the record[.]" Tenn. Code Ann. § 10-7-505(g) (2012). A " fee" is commonly defined as "[t]he charge to a client for services performed for the client[.]" *Black's Law Dictionary* 154 (10th ed. 2014). A "cost" is commonly defined as "[t]he amount paid or charged for something; price or expenditure." *Black's Law Dictionary* 422 (10th ed. 2014). Based on the language utilized in Tennessee Code Annotated § 10-7-505(g), the statute contemplates that attorneys' fees may be recovered only if they are incurred in efforts to obtain requested public records. We see no authority in the statute that would permit a self-represented litigant—even a licensed attorney such as Mr. Clarke—to recover "attorneys' fees" for personal efforts expended on a public records case. Self-represented efforts involve no costs in the form of attorneys' fees because the incurring of such fees implies an agency

relationship. *See Black's Law Dictionary* 153 (10th ed. 2014) (defining an attorney as "one who is designated to transact business for another; a legal agent"). Although Mr. Clarke is entitled to recover attorneys' fees he actually incurred as a cost, he is not entitled to recover attorneys' fees he billed while working on his own case. His rights to the public records under the TPRA are as a citizen; his status as an attorney does not automatically afford him rights superior to that of any other citizen under the Act. As such, he cannot recover any attorneys' fees unless he actually incurs such fees as a "cost[] involved in obtaining the record[.]" Tenn. Code Ann. § 10-7-505(g) (2012).[5]

Based on our interpretation of the statute, we must deny Mr. Clarke's assertion that the trial court should have awarded him additional attorneys' fees. In fact, we must conclude that the fees awarded to him exceed the recovery that is permitted under the

_____

[5] From our research, we have failed to locate a Tennessee decision directly addressing this issue. We observe that in two cases where attorneys were proceeding *pro se* on appeal, this Court denied requests for attorneys' fees under the TPRA, although, unlike in this case, on the basis that the statutory standard of "willfulness" had not been met. *See Moncier v. Bd. of Prof'l Responsibility*, No. M2012-00779-COA-R3-CV, 2013 WL 2490576, at *9 (Tenn. Ct. App. June 6, 2013); *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 358 S.W.3d 213, 226 (Tenn. Ct. App. 2010). It is not entirely clear whether the attorneys/records requestors in those cases were represented by counsel at the trial court level. We note that, under the Freedom of Information Act, although there has not been a consensus among the federal Circuit Courts of Appeal as to whether a *pro se* lawyer is entitled to attorneys' fees, *compare Falcone v. I.R.S.*, 714 F.2d 646, 647-48 (6th Cir. 1983) (holding that *pro se* attorney plaintiffs are not entitled to attorneys' fees under the Freedom of Information Act), *and Aronson v. U.S. Dep't of Hous. and Urban Dev.*, 866 F.2d 1, 4-6 (1st Cir. 1989) (agreeing with *Falcone*), *with Cazalas v. U.S. Dep't of Justice*, 709 F.2d 1051, 1057 (5th Cir. 1983) ("That a litigant attorney represents herself or himself does not preclude an award of attorney fees under the [Freedom of Information Act]."), it appears most Circuits that have addressed the question recently have answered it in the negative. *See Pietrangelo v. U.S. Army*, 568 F.3d 341, 344-45 (2d Cir. 2009); *Burka v. U.S. Dep't of Health and Human Servs.*, 142 F.3d 1286, 1292 (D.C. Cir. 1998); *Ray v. U.S. Dep't of Justice*, 87 F.3d 1250, 1252 (11th Cir. 1996). We note that the D.C. Circuit's decision in *Burka* was in contrast to a prior rule it had articulated in *Cuneo v. Rumsfeld*, 553 F.2d 1360 (D.C. Cir. 1977), which had held that a self-represented party should not be denied attorneys' fees simply because he or she was an attorney. The *Burka* court explained that its change in position was influenced in large part by the United State Supreme Court's decision in *Kay v. Ehrler*, 499 U.S. 432 (1991). In *Kay*, the Supreme Court concluded that a *pro se* attorney was not entitled to attorneys' fees under 42 U.S.C. § 1988. *Kay*, 499 U.S. at 437-38. Although recognizing that the *Kay* decision dealt with a request for attorneys' fees under 42 U.S.C. § 1988 as opposed to a request for fees under the Freedom of Information Act, the *Burka* court observed that *Kay* "implicitly rejected a distinction between fee claims arising under section 1988 and FOIA by referring with approval to *Falcone v. IRS*, 714 F.2d 646 (6th Cir. 1983)[.]" *Burka*, 142 F.3d at 1289. The *Burka* court concluded that it was "obvious" that the Supreme Court "intended its ruling in [*Kay*] to apply beyond section 1988 cases to other similar fee-shifting statutes, particularly the one in [the Freedom of Information Act]." *Id.* Moreover, it noted that "[v]irtually all other courts that have considered this issue since *Kay* have reached a similar conclusion." *Id.* Among the many reasons the federal Circuits cite in support of denying *pro se* attorneys a recovery of attorneys' fees are (1) a "fear of creating a 'cottage industry' for claimants using the Act solely as a way to generate fees[,]" *see*, *e.g.*, *Falcone*, 714 F.2d at 648 (citation omitted), and (2) a fear that treating *pro se* lawyers differently from other *pro se* litigants would "appear to be especially solicitous for the economic welfare of lawyers[,]" thereby threatening the image and public respect for the bar. *Aronson*, 866 F.2d at 6.

statute. As previously noted, Mr. Clarke requested an award of $11,685.00 in attorneys' fees. Of this amount, only $2,340.00 was attributed to the work of his attorney, Thomas Greer; the rest was attributed to fees billed by Mr. Clarke himself. Although the trial court had discretion to award attorneys' fees of up to $2,340.00, a cost corresponding to services Mr. Greer performed on behalf of Mr. Clarke, it did not have the authority to make an award of attorneys' fees in the amount of $3,500.00.[6] Nevertheless, because we have determined that Mr. Clarke is entitled to recover attorneys' fees and no proof was submitted by the City contesting the reasonableness of the amounts billed by Mr. Greer, we hereby modify the trial court's award of attorneys' fees from $3,500.00 to $2,340.00.

Although Mr. Clarke's last issue for review requests attorneys' fees for work performed on the instant appeal, our discussion above does not support his request for relief. Throughout the entirety of this appeal, both in his brief and at oral argument, Mr. Clarke has proceeded *pro se* and advocated on his own behalf. Without deciding whether a recovery of attorneys' fees would otherwise be appropriate if Mr. Clarke had actually incurred costs for legal representation on this appeal, we conclude that his request for relief must be denied.

## IV. Conclusion

For the reasons explained above, we hereby find that the trial court did not abuse its discretion in awarding attorneys' fees to Appellee/Cross-Appellant. However, we modify the trial court's award of attorneys' fees against the City from $3,500.00 to $2,340.00. We further conclude that Mr. Clarke is not entitled to any attorneys' fees for work performed on this appeal. Costs of the appeal are hereby assessed against the Appellant/Cross-Appellee, City of Memphis, for which execution may issue if necessary. This matter is remanded to the trial court for enforcement of the judgment, the collection of costs, and further proceedings as may be necessary and are consistent with this Opinion.

_____
ARNOLD B. GOLDIN, JUDGE

---

[6] An award of $3,500.00 would necessarily include fees attributable to amounts Mr. Clarke billed while working on his own case.