IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 13, 2021 Session

## MEGHAN CONLEY v. KNOX COUNTY SHERIFF, ET AL.

**Appeal from the Chancery Court for Knox County**
**No. 197897-1        John F. Weaver, Chancellor**

———————————————————

**No. E2020-01713-COA-R3-CV**

———————————————————

This is a Tennessee Public Records Act case. The trial court found that Appellant willfully denied two of Appellee's twelve public records requests, but it awarded Appellee attorney's fees and costs incurred throughout the entire litigation. We affirm the trial court's findings that Appellant willfully denied two of Appellee's public records requests. However, we conclude that the trial court abused its discretion in awarding Appellee costs and fees incurred throughout the entire litigation. Accordingly, we vacate that portion of the trial court's order and remand with instructions. The trial court's order is otherwise affirmed, and Appellee's request for appellate attorney's fees and costs is denied.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated in Part, Affirmed in Part, and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and KRISTI M. DAVIS, JJ., joined.

Amanda Lynn Morse and David M. Sanders, Knoxville, Tennessee, for the appellants, Knox County Sheriff and Knox County, Tennessee.

Andrew C. Fels and Dean Hill Rivkin, Knoxville, Tennessee, for the appellee, Meghan Conley.

Paul R. McAdoo, Brentwood, Tennessee, for the amici curiae, Reporters Committee for the Freedom of the Press and Thirteen Media Organizations in Support of Appellee.

# OPINION

## I. Background

In August 2017, Appellee Meghan Conley initiated a series of public records requests to Appellant Knox County Sheriff's Office ("KCSO"). Ms. Conley sought information regarding KCSO's agreement with Immigrations and Customs Enforcement ("ICE") concerning the detention of suspects. From 2017 through 2019, Ms. Conley made several records requests regarding this information. Although KCSO produced some documents in response to the requests, it also denied some of Ms. Conley's requests.

On April 18, 2019, Ms. Conley filed a petition for hearing on public records request denials and access to public records in the Chancery Court for Knox County ("trial court"). On October 2, 2019, KCSO answered the petition. Pertinent here, on June 7, 2019, Ms. Conley filed a List of Unfulfilled Records Requests ("LURR"), wherein she identified twelve records requests that she alleged KCSO improperly denied in violation of the Tennessee Public Records Act ("TPRA"). These twelve requests were the focus of the trial court's hearings on June 10, June 11, December 9, and December 10, 2019.

On April 9, 2020, the trial court entered an order and accompanying memorandum opinion. In pertinent part, the trial court found that, with the exception of KCSO's denial of the LURR A1 and LURR B11 requests, "the record d[id] not sustain that [] KCSO failed to produce any public record." Because the trial court found that KCSO willfully denied Ms. Conley's LURR A1 and LURR B11 requests, the trial court ordered: (1) KCSO to comply with the TPRA, specifically, Tennessee Code Annotated section 10-7-503(a)(2)(B);[1] (2) KCSO to produce January 1, 2019 through March 8, 2019 emails between certain named individuals at KCSO and personnel from the Department of Homeland Security ("DHS") and ICE, or inform Ms. Conley within 7 business days that such public records did not exist;[2] (3) that "KCSO [was] prohibited from treating any written request for inspection or copies generally phrased in terms of information sought as insufficient for lack of specificity or detail;" (4) KCSO to begin, within 30 days, to implement a system that would allow for the public's inspection of redacted arrest reports;[3] (5) that Ms. Conley be awarded costs, including attorney's fees, related to her LURR A1 and LURR B11 requests; (6) that costs of this cause were taxed to the sheriff in his official capacity; and (7) that the time limits in paragraph 4, *supra*, were tolled and suspended "for

---

[1] Tennessee Code Annotated section 10-7-503(a)(2)(B) provides that "[t]he custodian of a public record . . . shall promptly make available for inspection any public record not specifically exempt from disclosure." Tenn. Code Ann. § 10-7-503(a)(2)(B). In the event the record cannot be made promptly available, the statute directs the custodian, within 7 days, to either make the requested information available, deny the request in writing, or provide the amount of time that will be reasonably necessary to produce the record. Tenn. Code Ann. § 10-7-503(a)(2)(B)(i)-(iii).

[2] This relief is related to Ms. Conley's LURR B11 request.

[3] This relief is related to Ms. Conley's LURR A1 request.

so long as any executive order of the Governor . . . or order of the Health Department of Knox County mandates the closure of nonessential businesses to the public" due to the Covid-19 pandemic.

On May 8, 2020, the parties filed cross-motions to alter or amend. In her motion, Ms. Conley sought a higher award of attorney's fees and costs. In its motion, KCSO asked the trial court to amend paragraphs 3 and 4 of its order, discussed *supra*. On June 24, 2020, Dean Hill Rivkin filed an appearance as counsel for Ms. Conley to litigate her request for attorney's fees, which the trial court heard on July 2, 2020. On November 23, 2020, the trial court entered its order on KCSO's motion to alter or amend. The trial court granted the motion by amending the language of paragraph 3 of its order to read: "KCSO is prohibited from treating any written request for inspection or copies generally phrased in terms of information sought as insufficient for lack of specificity or detail automatically because the written request is generally phrased in terms of information sought." Other than this change, the trial court denied KCSO's motion.

On November 24, 2020, the trial court entered its order and memorandum on Ms. Conley's motion to alter or amend. Pertinent here, the trial court amended its order to award Ms. Conley fees and costs for the *entire* litigation, rather than fees and costs incurred in obtaining relief related to her LURR A1 and LURR B11 requests. Specifically, the trial court awarded Ms. Conley: (1) $2,805.25 in expenses; (2) $55,762.50 for Andrew Fels' (Ms. Conley's primary attorney) fees; and (3) $19,440.00 for Mr. Rivkin's attorney's fees. On December 23, 2020, KCSO appealed.

## II. Issues

As stated in its brief, KCSO raises two issues on appeal:

1. Did the trial court fail to properly consider the 2008 Amendment to Tenn. Code[] Ann. § 10-7-503(a)(4), which requires that any request "be sufficiently detailed to enable the governmental entity to identify the specific records for inspection and copying?"

2. Whether the Chancery Court erred in holding that Tenn. Code[] Ann. § 10-7-505(g) allows for the award of attorneys' fees pertaining to records requests that were lawfully denied.

In the posture of Appellee, Ms. Conley raises two issues for review:

1. Should [Ms.] Conley prevail on this appeal, is she entitled to an award of reasonable statutory attorneys' fees and costs for the work devoted to the appeal?

2. Should the case be remanded to the trial court for a final determination of attorneys' fees and costs on appeal and a calculation of post-judgment interest on the award of fees and costs rendered by the trial court below?

## III. Standard of Review

We review a non-jury case "*de novo* upon the record with a presumption of correctness as to the findings of fact, unless the preponderance of the evidence is otherwise." *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000) (citing Tenn. R. App. P. 13(d)). The trial court's conclusions of law are reviewed *de novo* and "are accorded no presumption of correctness." *Brunswick Acceptance Co., LLC v. MEJ, LLC*, 292 S.W.3d 638, 642 (Tenn. 2008). Because statutory interpretation is a question of law, we also review the trial court's interpretation of any statute *de novo* with no presumption of correctness. *In re Estate of Tanner*, 295 S.W.3d 610, 613 (Tenn. 2009).

## IV. Procedural Deficiencies

Before turning to the substantive issues, we first address the procedural deficiencies in KCSO's briefing that have complicated this Court's review. The contents of appellate briefs are governed by Rule 27 of the Tennessee Rules of Appellate Procedure, which requires an appellant's brief to list "[a] statement of the issues presented for review . . . ." Tenn. R. App. P. 27(a)(4). The statement of the issues is vitally important to the appeal as it provides this Court with the questions that we are asked to answer on review. The statement is also significant because our "[a]ppellate review is generally limited" to those issues listed in it. *Hodge v. Craig*, 382 S.W.3d 325, 334 (Tenn. 2012) (citing Tenn. R. App. P. 13(b)). Indeed, "[c]ourts have consistently held that . . . [a]n issue not included [in the statement of the issues] is not properly before the Court of Appeals." *Hawkins v. Hart*, 86 S.W.3d 522, 531 (Tenn. Ct. App. 2001). Accordingly, appellants should endeavor to frame each issue "as specifically as the nature of the error will permit," *Hodge*, 382 S.W.3d at 335 (citing *Fahey v. Eldridge*, 46 S.W.3d 138, 143-44 (Tenn. 2001); *State v. Williams*, 914 S.W.2d 940, 948 (Tenn. Crim. App. 1995)), as this Court is not required to "search[] for hidden questions" in appellants' briefs. *Hodge*, 382 S.W.3d at 334 (citing Bryan A. Garner, *Garner on Language and Writing* 115 (2009); Robert L. Stern, *Appellate Practice in the United States* § 10.9, at 263 (2d ed.1989)).

As listed in its statement of the issues presented for review, KCSO's first issue is whether the trial court "fail[ed] to properly consider the 2008 Amendment to [Tennessee Code Annotated section] 10-7-503(a)(4), which requires that any [public records] request 'be sufficiently detailed to enable the governmental entity to identify the specific records for inspection and copying.'" KCSO's framing of this issue is too general insofar as it fails to identify which of the trial court's holdings were allegedly made without "properly considering" section 10-7-503(a)(4). In other words, KCSO fails to specify "the nature of the error," *see Hodge*, 382 S.W.3d at 335 (citing *Fahey*, 46 S.W.3d at 143-

44; ***Williams***, 914 S.W.2d at 948); rather, KCSO vaguely questions whether the trial court considered part of the statute. Ostensibly, because section 10-7-503(a)(4) concerns the specificity of records requests, we might assume that KCSO's first issue pertains to the question of whether the trial court failed to properly consider section 10-7-503(a)(4) when it: (1) reviewed Ms. Conley's records requests; (2) determined that some of them were "sufficiently detailed;" (3) and determined that KCSO wrongfully denied them. However, KCSO does not make this argument in the body of its brief. Rather, KCSO asserts that the trial court "erred in *de facto* holding that a public records request may be 'generally phrased in terms of information,' when the statute itself requires that requests 'be sufficiently detailed to enable the governmental entity to identify the specific records for inspection and copying.'" Problematically, KCSO fails to list this alleged error as an issue for our review. Indeed, this Court has only deduced that KCSO argues the same after "searching for hidden questions" in KCSO's brief. *See **Hodge***, 382 S.W.3d at 334 (citing Bryan A. Garner, *Garner on Language and Writing* 115 (2009); Robert L. Stern, *Appellate Practice in the United States* § 10.9, at 263 (2d ed.1989)). At oral argument before this Court, when asked if KCSO raised the issue of the trial court's "*de facto* holding," counsel for the entity admitted that it did not list this issue in its statement of the issues but instead argued it as a "sub category" in the body of its brief. Longstanding case law provides that "an issue may be deemed waived when it is argued in the brief but is not designated as an issue in accordance with [Tennessee Rule of Appellate Procedure] 27(a)(4)." ***Hodge***, 382 S.W.3d at 335. We decline to part from such precedent here. Having failed to include as an issue whether the trial court erred in making its "*de facto* holding that a public records request may be 'generally phrased in terms of information,'" KCSO has waived this issue.

KCSO's second issue for review is "[w]hether the [trial court] erred in holding that [Tennessee Code Annotated section] 10-7-505(g) allows for the award of attorneys' fees pertaining to records requests that were lawfully denied." Despite its specificity in framing this issue, in the body of its brief, KCSO makes arguments outside the statement of this issue. Specifically, KCSO makes arguments concerning: (1) whether the trial court erred in finding that KCSO acted willfully when it denied Ms. Conley's LURR A1 and LURR B11 requests; and (2) whether the trial court erred in awarding Ms. Conley Mr. Rivkin's attorney's fees for his litigation of the fees she incurred during the primary litigation, i.e., "fees on fees." Because the issue of willfulness is intertwined with the question of whether a court may award attorney's fees for records requests that were lawfully denied, we elect to review that question despite KCSO's failure to explicitly include the question of willfulness in its statement of the issue. *See* Tenn. R. App. P. 13(b). However, we decline to address KCSO's other "sub issue," i.e. Mr. Rivkin's "fees on fees," as it presents a wholly separate question that was not included in KCSO's statement of the issues for review. ***Hodge***, 382 S.W.3d at 335. Having clarified the issues that are properly before us, we turn to our analysis.

## V. Analysis

"The public's right to examine governmental records has been recognized by Tennessee courts for more than a century." ***Taylor v. Town of Lynnville***, No. M2016-01393-COA-R3-CV, 2017 WL 2984194, at *2 (Tenn. Ct. App. July 13, 2017) (citing ***Tennessean v. Metro. Gov't of Nashville***, 485 S.W.3d 857, 864 (Tenn. 2016)). This right was codified in 1957 when the Tennessee Legislature enacted the TPRA. ***Taylor***, 2017 WL 2984194, at *2; *see also* ***Schneider v. City of Jackson***, 226 S.W.3d 332, 339 (Tenn. 2007). The TPRA broadly defines "public records" to include

> all documents, papers, letters, maps, books, photographs, microfilms, electronic data processing files and output, films, sound recordings, or other material, regardless of physical form or characteristics, made or received pursuant to law or ordinance or in connection with the transaction of official business by any governmental entity.

Tenn. Code Ann. § 10-7-503(a)(1)(A)(i). "Given this definition, the [TPRA] has been described as an 'all[-]encompassing legislative attempt to cover all printed matter created or received by government in its official capacity.'" ***Schneider***, 226 S.W.3d at 339-40 (quoting ***Griffin v. City of Knoxville***, 821 S.W.2d 921, 923 (Tenn. 1991)).

As this Court has explained,

> [t]here is a "presumption of openness" under the TPRA and a "clear legislative mandate favoring disclosure of governmental records." ***Schneider***, 226 S.W.3d at 340 (citations omitted). Indeed, the statute requires that "[a]ll state, county and municipal records shall, at all times during business hours . . . be open for personal inspection by any citizen of this state." Tenn. Code Ann. § 10-7-503(a)(2)(A). Moreover, unless the requested public record is specifically exempt from disclosure, the records custodian must promptly make it available for inspection. Tenn. Code Ann. § 10-7-503(a)(2)(B).

***Taylor***, 2017 WL 2984194, at *2. The public policy behind the "presumption of openness" is plainly that "access to governmental records promotes public awareness and knowledge of governmental actions and encourages governmental officials and agencies to remain accountable to the citizens of Tennessee." ***Schneider***, 226 S.W.3d at 339 (citing ***Memphis Publ'g Co. v. Cherokee Children & Family Servs., Inc.***, 87 S.W.3d 67, 74-75 (Tenn. 2002)).

"If a person is denied access to public records, the Act itself provides the remedy," ***Hickman v. Tennessee Bd. of Prob. & Parole***, No. M2001-02346-COA-R3-CV, 2003 WL 724474, at *4 (Tenn. Ct. App. Mar. 4, 2003), to-wit:

(a) Any citizen of Tennessee who shall request the right of personal inspection of any state, county or municipal record as provided in § 10-7-503, and whose request has been in whole or in part denied by the official and/or designee of the official or through any act or regulation of any official or designee of any official, shall be entitled to petition for access to any such record and to obtain judicial review of the actions taken to deny the access.

Tenn. Code Ann. § 10-7-505(a). The TPRA also allows for the recovery of reasonable attorney's fees and costs incurred in obtaining any public record that a governmental entity "willfully refused to disclose. . . ." Tenn. Code Ann. § 10-7-505(g). With the foregoing law in mind, we turn to the substantive issues on appeal.

## A. Trial Court's Consideration of Tennessee Code Annotated Section 10-7-503(a)(4)

As discussed, *supra*, KCSO's first issue broadly questions whether the trial court "fail[ed] to properly consider" the 2008 Amendment to Tennessee Code Annotated section 10-7-503(a)(4). Although the TPRA allows the public a right to examine governmental records, section 10-7-503(a)(4) makes clear that it does not require "a governmental entity to sort through files to compile information or to create or recreate a record that does not exist." Tenn. Code Ann. § 10-7-503(a)(4). Accordingly, "[a]ny request for inspection or copying of a public record [must] be sufficiently detailed to enable the governmental entity to identify the specific records for inspection and copying." Tenn. Code Ann. § 10-7-503(a)(4).

It is clear from its order that the trial court considered section 10-7-503(a)(4) when it found that KCSO violated the TPRA. Indeed, the trial court quoted the statute in its order and explained that this section of the TPRA "[has] led to most of the controversy in this litigation." The trial court then devoted more than seven pages of its order to the question of whether Ms. Conley's requests were sufficiently detailed. Following this comprehensive discussion, the trial court examined Ms. Conley's twelve records requests to determine whether such requests were "sufficiently detailed" as required under the statute. A trial court speaks through its order, *see Palmer v. Palmer*, 562 S.W.2d 833, 837 (Tenn. Ct. App. 1977), and here, it is clear that the trial court thoroughly considered the 2008 Amendment to section 10-7-503(a)(4) when it entered its final order.

## B. Trial Court Attorney's Fees

The remaining issues concern whether Ms. Conley is entitled to an award of reasonable costs and attorney's fees both at trial and on appeal. We begin by reviewing the trial court's award of Ms. Conley's attorney's fees incurred at the trial level. The trial court awarded Ms. Conley fees under Tennessee Code Annotated section 10-7-505(g), discussed briefly *supra*. Under this statute, if a court finds that a governmental entity

*willfully* refused to disclose a record that the entity knew was public, the court may, in its discretion, award the reasonable costs involved in obtaining that record, including attorney's fees. Tenn. Code Ann. § 10-7-505(g). We review the trial court's decision to award such fees under an abuse of discretion standard. *Madden Phillips Constr., Inc. v. GGAT Dev. Corp.*, 315 S.W.3d 800, 827 (Tenn. Ct. App. 2009). Turning to the record, although Ms. Conley averred that KCSO wrongfully denied twelve records requests, the trial court found that KCSO *willfully* denied only two of them, LURR A1 and LURR B11. As discussed, *supra*, although KCSO failed to raise the issue of willfulness on appeal, in our discretion, we elect to address this threshold question as part of our review of the propriety of the trial court's award of Ms. Conley's trial level attorney's fees. *See* Tenn. R. App. P. 13(b).

### 1. Willfulness

This Court has previously explained the "willfulness" element of the discretionary fees provision of the TPRA in *Clarke v. City of Memphis*, 473 S.W.3d 285, 290 (Tenn. Ct. App. 2015), to-wit:

> We recently discussed the standard required for willfulness under the TPRA in *Friedmann v. Marshall County*, 471 S.W.3d 427 (Tenn. Ct. App. 2015). Although in *Friedmann* we acknowledged that varying judicial statements had been made on the topic, we stressed that willfulness should be measured "in terms of the relative worth of the legal justification cited by a municipality to refuse access to records." [*Id.* at 439]. In other words, the determination of willfulness "should focus on whether there is an absence of good faith with respect to the legal position a municipality relies on in support of its refusal of records." *Id.* at 438.
>
> In *The Tennessean v. City of Lebanon*, this Court explained that courts employ the following analysis in assessing willfulness:
>
> > Th[e] analysis emphasizes the component of the statutory standard that the entity or its officials know that the record sought is public and subject to disclosure. It evaluates the validity of the refusing entity's legal position supporting its refusal; critical to that determination is an evaluation of the clarity, or lack thereof, of the law on the issue involved.
>
> *The Tennessean v. City of Lebanon*, No. M2002-02078-COA-R3-CV, 2004 WL 290705, at *9 (Tenn. Ct. App. Feb. 13, 2004). If a municipality denies access to records by invoking a legal position that is not supported by existing law or by a good faith argument for the modification of existing law, the circumstances of the case will likely warrant a finding of willfulness.

*Clarke*, 473 S.W.3d at 290. The governmental entity bears the burden of proving, by a preponderance of the evidence, its justification for not disclosing the records sought. Tenn. Code Ann. § 10-7-505(c). With the foregoing law in mind, we turn to review whether KCSO's denials of Ms. Conley's LURR A1 and LURR B11 requests were willful.

### a. LURR A1

On November 30, 2018, Ms. Conley requested to inspect KCSO's arrest reports, to-wit:

> I also wanted to touch base with you about scheduling a time to inspect arrest reports. It is my understanding that arrest reports of inmates in the Knox County jail are public records and that residents of Tennessee are able to access these records without submitting a records request. Are there specific hours to be able to review arrest reports? I would appreciate your guidance on this matter.

Hillary Martin, KCSO's public records coordinator, responded:

> Unfortunately, we don't have a system that allows the public to inspect arrest reports. The only system we have is for law enforcement use only, but we will be more than happy to provide you with copies of the reports that you would like. There is a "Records Request" button on knoxsheriff.org that allows you to submit your requests online.

Concerning this request, the trial court found:

> [Ms.] Conley's above inquiry appears to be a request for a time for her to appear and make a request, in person, to inspect KCSO's arrest records. . . . In anticipation of her appearing, the KCSO informed [Ms.] Conley, in effect, that arrest records are not open for inspection. KCSO responded as to its willingness to produce copies, presumably redacted copies, but according to the evidence at the hearing, the rate of available redacted copies is much less than the rate of arrests.
>
> This is not in compliance with the mandate of Tenn. Code Ann. § 10-7-503(a)(2)(A). These records are to "be open for inspection." [Tenn. Code Ann. § 10-7-503(a)(2)(A)]. . . .

As the trial court explained, the TPRA contemplates exactly what Ms. Conley sought, i.e., to appear at KCSO's office during business hours to review public records (arrest reports). *See* Tenn. Code Ann. § 10-7-503(a)(2)(A) ("All state, county and

- 9 -

municipal records shall, at all times during business hours . . . be open for personal inspection by any citizen of this state, and those in charge of the records shall not refuse such right of inspection to any citizen, unless otherwise provided by state law."). KCSO does not appear to dispute that arrest reports are public records, nor does KCSO argue that Ms. Conley should not have had access to these records. Rather, KCSO argues that its denial of LURR A1 was not willful because it "was essentially the result of a miscommunication." KCSO alleges that it believed Ms. Conley wanted to inspect *unredacted* arrest reports, which would have contained confidential information that KCSO was prohibited from disclosing to the public. As an initial matter, the record does not support KCSO's argument. Turning to the transcript, Ms. Martin testified that she denied Ms. Conley's LURR A1 request because KCSO did not "have a public access point where people can just go look at arrest records because they contain confidential information the way they're stored now." Accordingly, even if Ms. Conley had specified that she was seeking to inspect *redacted* arrest reports, it does not appear that KCSO would have been able to fulfill such request.

More importantly, there is no legal justification for KCSO's denial of LURR A1. *See **Clarke***, 473 S.W.3d at 290. The TPRA *requires* the disclosure of public records *even if those records contain confidential information*.[4] Indeed, Tennessee Code Annotated section 10-7-503(a)(5) provides that such confidential information "shall be redacted whenever possible, *and the redacted record shall be made available for inspection and copying*." Tenn. Code Ann. § 10-7-503(a)(5) (emphasis added). As we noted in ***City of Lebanon***, when a governmental entity uses a computer program to store public records, but such records contain confidential information, the entity has an obligation to generate another program "to produce new reports containing only public information, while eliminating confidential information." 2004 WL 290705, at *7 (citing ***Tennessean v. Elec. Power Bd. of Nashville***, 979 S.W.2d 297, 304 (Tenn. 1998); ***Hickman***, 2003 WL 724474, at *9-10).[5] The record shows that, although it used a program to track arrest reports, KCSO failed to create a similar system that would allow for the public's review of such redacted reports. Indeed, this is the sole reason KCSO denied Ms. Conley's LURR A1 request. Accordingly, it is clear that, KCSO's denial of LURR A1 not only had no basis in law, *see **Clarke***, 473 S.W.3d at 290, but KCSO was obligated to create a system that would allow for the public's inspection of the records Ms. Conley requested.[6] *See **City of Lebanon***,

---

[4] Tennessee Code Annotated section 10-7-504 discusses which records are to remain confidential under the TPRA.

[5] Although the TPRA does not require a governmental entity to "sort through files to compile information or to create or recreate a record that does not exist," *see* Tenn. Code Ann. § 10-7-503(a)(4), the TPRA explicitly provides that "[t]he redaction of confidential information shall not constitute the creation of a new record." Tenn. Code Ann. § 10-7-503(a)(5).

[6] To remedy KCSO's violation of the TPRA, the trial court ordered KCSO to "implement . . . a computer program or system[] that will enable it to produce its arrest records on a current basis for inspection and viewing by citizens with the confidential information redacted . . . ." It does not appear from its appellate briefing that KCSO takes issue with this part of the trial court's order.

2004 WL 290705, at *7. Given the foregoing, we affirm the trial court's conclusion that KCSO willfully denied LURR A1.

### b. LURR B11

On March 8, 2019, Ms. Conley requested "access to inspect the following documents from the period of January 1, 2019 to the present:

> Any and all records of communication, including letters, emails, and memoranda, exchanged within and among personnel of the Knox County Sheriff's Office (Tom Spangler, Bernie Lyon, Kimberly Glenn, William Purvis, Brian Bivens) and DHS agencies and subagencies, including ICE (with email addresses ending in @ice.dhs.gov)."

As an initial matter, we again note that KCSO does not dispute that the records requested were public and subject to disclosure. Indeed, the record shows that KCSO partially responded to this request with "about six to eight pages" of documents.

Before proceeding further with our review, it is important to discuss KCSO's internal email retention policy (the "retention policy") that was in effect when Ms. Conley made the above request. This policy was admitted into evidence as a trial exhibit, and KCSO's Chief Counsel, Michael Ruble, testified to its contents, purpose, and implementation. Chief Ruble also testified that each employee was responsible for reviewing the retention policy and signing a form acknowledging its contents and their responsibility under it. According to the record, the purpose of the retention policy was to "assure[] effective management of electronic email messages and [to] compl[y] with State law by establishing a retention and access policy." The policy provided a definition of "public records" and specifically noted that "work related emails" were public records subject to the retention guidelines. Concerning implementation of the guidelines, the policy provided that "[e]ach email user **shall** assure that his/her email (including both sent and received emails) are retained **by the user** in **printed** format or electronically stored . . . ." (Emphases in original). We also note that the policy included an "automatic clean[-]up/deletion policy," which explained that emails would be stored in the user's inbox and outbox for 30 days before being moved into the user's deleted folder, where emails would be stored for an additional 30 days before being permanently deleted. In short, KCSO's internal policy required each employee to print and physically store any emails that were both 60 days old and "in furtherance of KCSO business." Chief Ruble's testimony confirmed that if an email was a public record, under the retention policy, it would be "archived" by the employee, i.e., "[i]t would be printed and retained." With the foregoing in mind, we turn back to Ms. Conley's LURR B11 request.

Ms. Martin testified that her investigation for documents responsive to Ms. Conley's request was limited to asking KCSO's IT department to search its servers for email

messages between Mr. Spangler, Mr. Lyon, Ms. Glenn, Mr. Purvis, Mr. Bivens and DHS and ICE. As discussed, *supra*, emails remained on KCSO's servers for a maximum of only 60 days. Because Ms. Conley requested records between January 1, 2019 and March 8, 2019, a range of 66 days, it is possible that some of the records would not have been on KCSO's servers and would not have been found by IT's search. Rather, such documents could have been archived by employees under KCSO's retention policy. As Ms. Martin testified:

> Ms. Conley's Attorney: So, there still might be archived emails out there matching this description?
>
> Ms. Martin: Correct, but we'd have to search through every employee's archives to find that.
>
> Q: But it's only for the five employees, right?
>
> A: Uhm, correct. . . . So, yes, we would just have to go to those five employees and ask them if they had anything archived.

Ms. Martin admitted that KCSO chose not to conduct a search of the five employees' archived emails for documents responsive to Ms. Conley's request.

As an initial matter, the trial court found that KCSO's refusal to search for archived emails amounted to a denial of Ms. Conley's request "without [an] adequate response." We agree. In LURR B11, Ms. Conley asked to review *all emails* that passed between certain individuals during a specific time period. The record shows that Ms. Conley did not distinguish between emails stored on KCSO's servers and those that had been archived, but KCSO did.[7] The record also demonstrates that KCSO unilaterally chose to limit its search for responsive documents to records located on its server, despite having a policy that required employees to retain archived emails. This was error. The TPRA requires the custodian of a public record to "promptly make available for inspection *any* public record not specifically exempt from disclosure." Tenn. Code Ann. § 10-7-503(a)(2)(B) (emphasis added). If it is not "practicable" to do so, the custodian is then *required*, within 7 business days to: (1) make the requested record available to the requestor; (2) deny the request in writing and include the basis for the denial; or (3) furnish the requestor in writing or via a response form the time reasonably necessary to produce the record or information. Tenn. Code Ann. § 10-7-503(a)(2)(B)(i)-(iii). A governmental entity's failure to respond to a records request as described above "*shall* constitute a denial" of the request. Tenn. Code Ann. § 10-7-503(a)(3) (emphasis added). It is clear from the record that KCSO failed to either: (1) provide archived emails for Ms. Conley's inspection; or (2) respond to Ms.

---

[7] Ms. Conley was not required to specify the manner in which KCSO stored the emails in order to warrant her access to them.

Conley in a manner outlined above. In short, KCSO's silence concerning the archived emails effectively amounted to a denial of these specific records and a partial denial of LURR B11. Having concluded that KCSO partially denied Ms. Conley's LURR B11 request, we turn to review whether such denial was willful.

In its appellate brief, KCSO again fails to provide any legal justification for its denial of archived emails. *See Clarke*, 473 S.W.3d at 290. Rather, KCSO argues that because it produced some responsive records, its actions were not "willful." This argument is unavailing. "When a governmental entity is confronted with a public records request, it assumes ultimate responsibility for a *faithful* and *legal administration* of the TPRA." *Taylor*, 2017 WL 2984194, at *8 (emphases added). KCSO's calculated decision to limit its search for responsive records hardly demonstrates its "faithful and legal administration of the TPRA." *Id.* Further, the fact that KCSO conducted a limited search and produced some responsive documents, as the TPRA required, does not excuse its failure to search for other responsive records. Indeed, under the TPRA, KCSO was *required* to search for and produce "*any* public record not specifically exempt from disclosure." Tenn. Code Ann. § 10-7-503(a)(2)(B) (emphasis added). Rather than fulfill its duty, KCSO deliberately chose not to search for archived emails, despite its own policy *requiring* employees to retain these records. KCSO presents no legal justification for this decision. *See Clarke*, 473 S.W.3d at 290. As such, KCSO's unilateral decision to limit its search of records clearly frustrated the purpose of the TPRA to provide public access to governmental records, *Schneider*, 226 S.W.3d at 339 (citing *Memphis Publ'g Co.*, 87 S.W.3d at 74-75), and was contrary to the TPRA's presumption of openness. *See Taylor*, 2017 WL 2984194, at *2; *Schneider*, 226 S.W.3d at 340. Accordingly, we conclude that KCSO's partial denial of Ms. Conley's LURR B11 request was willful. Having affirmed the trial court's willfulness findings, we turn to review the trial court's award of Ms. Conley's attorney's fees.

## 2. Trial Attorney's Fees Award

In its amended order, the trial court awarded Ms. Conley attorney's fees she incurred throughout the entire litigation. As discussed, *supra*, the discretionary fees provision of the TPRA is found at Tennessee Code Annotated section 10-7-505(g). As an initial matter, we note that, when applying any statute, a court's duty is to ascertain and fully effectuate the "legislative intent [of the statute], taking care not to broaden [it] beyond its intended scope . . . ." *Womack v. Corr. Corp. of Am.*, 448 S.W.3d 362, 366 (Tenn. 2014) (citing *Shore v. Maple Lane Farms, LLC*, 411 S.W.3d 405, 420 (Tenn. 2013); *Carter v. Bell*, 279 S.W.3d 560, 564 (Tenn. 2009)). As the Tennessee Supreme Court has explained, "[o]ur analysis naturally begins with the words used in the statute," *Womack*, 448 S.W.3d at 366 (citing *Shore*, 411 S.W.3d at 420), and we must interpret those words under their "natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose." *Id.* (quoting *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012)).

- 13 -

Tennessee Code Annotated section 10-7-505(g) provides that

> [i]f the court finds that the governmental entity, or agent thereof, ***refusing to disclose a record***, knew that ***such record*** was public ***and willfully refused to disclose it***, such court may, in its discretion, assess all reasonable costs involved in obtaining ***the record***, including reasonable attorneys' fees, against the nondisclosing governmental entity. . . .

Tenn. Code Ann. § 10-7-505(g) (emphases added).  Under the plain language of the statute, a court is given discretion to award attorney's fees *only if* it first finds that a governmental entity willfully refused to disclose a record that the entity knew was public.  *See* Tenn. Code Ann. § 10-7-505(g).  The legislature's use of singular nouns and pronouns, i.e., "a record," "such record," "it," and "the record," demonstrates the legislature's intent that courts apply the discretionary fees provision to *each individual records request* when determining whether to award attorney's fees and costs.  Indeed, the statute provides that a court may "assess all reasonable costs involved in obtaining ***the record***," i.e., the record that the governmental entity willfully refused to disclose.  Tenn. Code Ann. § 10-7-505(g).

    ***Friedmann v. Corrections Corporation of America***, No. M2012-00212-COA-R3-CV, 2013 WL 784584 (Tenn. Ct. App. Feb. 28, 2013) illustrates this Court's prior application of the statute.  Like this case, ***Friedmann*** involved a governmental entity's denial of multiple public records requests.  ***Id.*** at *1-2.  The dispute involved two categories of documents: "(1) releases, settlement agreements, and other documents reflecting the settlement and/or payment of claims and/or litigation against [the governmental entity] in Tennessee ('the settlement agreements'); and (2) spreadsheets or summaries of claims and/or litigation concluded against [the governmental entity] in Tennessee ('the settlement reports')."  ***Id.*** at *2.  The governmental entity argued that it did not err in denying the petitioner's requests because the documents at issue were not public records.  ***Id.*** at *3.  The trial court disagreed and found that both the settlement agreements and the settlement reports were public records that should have been disclosed.  ***Id.*** at *2.  The trial court also found that the governmental entity's failure to disclose the settlement *agreements* was willful "because the law was well-settled that they should be disclosed."  ***Id.*** at *3.  However, the trial court found that the governmental entity's refusal to disclose the settlement *reports* was not willful because it was a "closer call" as to whether such documents were public records.  ***Id.***  Accordingly, the trial court awarded attorney's fees only for the request that was willfully denied, i.e., the request concerning the settlement agreements.  ***Id.***  The trial court did not award attorney's fees for the request regarding the settlement reports as it found that such request was not *willfully* denied.  ***Id.***  This Court affirmed the trial court's conclusions that the settlement reports and settlement agreements were public records subject to disclosure.  ***Id.*** at *8, 10.  We also affirmed the trial court's conclusion that the governmental entity willfully refused to disclose the settlement agreements.  ***Id.*** at *11.  We noted that the law was "well-settled" that such documents

- 14 -

were subject to disclosure under the TPRA. *Id.* Accordingly, we affirmed the trial court's award of attorney's fees for the petitioner's costs involved in obtaining these records. *Id.* However, we also agreed with the trial court that, because "the issue of the settlement reports was a close call," the petitioner was "not entitled to recover attorney's fees incurred that pertain[ed] to the settlement reports." *Id.* at \*12. *See also* **Schneider**, 226 S.W.3d at 347-48 (reviewing individual records requests to determine whether the governmental entity willfully denied each).

Here, the trial court initially followed our **Friedmann** opinion and awarded Ms. Conley costs and attorney's fees related only to those requests it found KCSO willfully denied, i.e., the LURR A1 and LURR B11 requests. However, the trial court departed from both the statute and our **Friedmann** opinion in its amended order. It appears that the trial court used the two willfulness findings to award Ms. Conley attorney's fees incurred throughout the *entire* litigation, including those incurred while litigating the ten records requests that were *not* willfully denied. Relying on this Court's opinions in **Little v. City of Chattanooga**, No. E2011-027-24-COA-R3-CV, 2012 WL 4358174 (Tenn. Ct. App. Sept. 25, 2012) ("**Little I**") and **Little v. City of Chattanooga**, No. E2013-00838-COA-R3-CV, 2014 WL 605430 (Tenn. Ct. App. Feb. 14, 2014) ("**Little II**"), the trial court implied that such an award was justified because, "[i]n addition to the production of the emails [(LURR B11)] and the implementation of a system for access to arrest records [(LURR A1)]," "this case heavily concerned [KCSO's] methods and procedures for addressing [all of] [Ms.] Conley's requests for public records." Given that the trial court's amended fees award is predicated on this Court's **Little** opinions, we briefly discuss those cases and the trial court's misapplication of same.

The **Little** cases involved several public records requests that the City of Chattanooga ("Chattanooga") denied. **Little**, 2012 WL 4358174, at \*1-4. Although Chattanooga did not dispute that the records were public and subject to disclosure, it denied the petitioner's requests because city officials "felt [the petitioner] was improperly using the [TPRA] to obtain discovery for another lawsuit . . . ." *Id.* at \*14. It was only after the petitioner filed her TPRA lawsuit that Chattanooga began producing the public records. *Id.* at \*5-8. As a result, the petitioner requested reasonable costs, including attorney's fees, for her efforts to obtain these records. The trial court denied the petitioner's request, finding that she failed to prove that Chattanooga's refusal to produce the public records was willful. *Id.* at \*9. The trial court opined that "[a]lthough slow and intermittent, [Chattanooga] has never refused to produce the records" because it produced them during the TPRA *litigation*. *Id.* In reversing the trial court, we explained that Chattanooga's production of records *after* the petitioner's lawsuit was filed was irrelevant to the question of willfulness. *Id.* at \*14. Rather, we held that the correct inquiry was whether, "'*at the time of refusal*, [Chattanooga] knew the record was public and willfully refused to disclose it.'" *Id.* (citing **City of Lebanon**, 2004 WL 290705, at \*7, n. 5) (emphasis added). Applying this timing, we concluded that Chattanooga willfully denied the petitioner access to public records and held that the trial court abused its discretion by not awarding the

- 15 -

petitioner attorney's fees. *Little*, 2012 WL 4358174, at \*14-15. This Court explained, in part, that "[t]he [trial] court did not apply the [fees] statute properly" because it "focused on the [number] of documents produced [after the petitioner filed the lawsuit] rather than on whether the proper procedure was followed or the withholding was justified." *Id.* at \*15. It is this language that the trial court relied on in its amended order to award Ms. Conley more fees. Specifically, the trial court concluded that this case, "like *Little*, was as much or more concerned with the methods and procedures utilized by [KCSO] in addressing [Ms. Conley's] records requests as with the specific documents obtained."

Contrary to the trial court's reading of the opinion, our holding in *Little I* was not predicated on Chattanooga's *internal* "methods and procedures," but rather on Chattanooga's failure to follow the proper procedures for responding to records requests *as outlined in and required by the TPRA. See* Tenn. Code Ann. § 10-7-503(a)(2)(A), (B); Tenn. Code Ann. § 10-7-503(a)(3); Tenn. Code Ann. § 10-7-505(g). As stated explicitly in our *Little I* opinion, "[t]he relevant question [was] whether [Chattanooga's] lack of production *pursuant to the statutory provision* was knowing and willful." *Id.* at \*14 (emphasis added). Importantly, the statute does not contemplate using a governmental entity's "methods and procedures" as a basis for an attorney's fees award. Although a governmental entity's internal methods or procedures may *cause* its willful denial of a records request, such procedures *alone* do not, *ipso facto*, trigger the awards provision. If a court determines that a governmental entity has not denied a public record, or that its denial of a public record was not willful, the court simply has no discretion to award attorney's fees. At that point, the inquiry is concluded, and the governmental entity's internal policies and procedures are no longer relevant to the issue of attorney's fees. Here, the trial court found that KCSO willfully denied only two of Ms. Conley's twelve records requests, LURR A1 and LURR B11. How KCSO responded to the other ten requests has no effect on Ms. Conley's attorney's fees award because the trial court did not find that KCSO willfully denied the remaining ten records requests. In short, the trial court misapplied the discretionary fees statute when it focused on the "methods and procedures" KCSO employed to address Ms. Conley's records requests rather than focusing on which of Ms. Conley's records requests were willfully denied.[8]

---

[8] The trial court's reliance on the *Little* cases to justify an increased attorney's fee award is also misplaced because the *Little* cases are distinguishable from this case. As discussed, *supra*, in *Little*, the petitioner made several record requests that Chattanooga denied. *Little*, 2012 WL 4358174, at \*1-4. This Court did not analyze each records request separately to determine which were willfully denied and which were not because we implicitly concluded that Chattanooga acted willfully in denying *all* of them. *Id.* at \*14. Thus, because all of the petitioner's records requests were willfully denied, we determined, in *Little II*, that she was entitled to all of her costs, including reasonable attorney's fees. *Little*, 2014 WL 605430, at \*8. Such a conclusion is in line with both the statute and our *Friedmann* opinion, discussed, *supra. See* Tenn. Code Ann. § 10-7-505(g); *Friedmann*, 2013 WL 784584 at \*11. Here, because the trial court found that only two of Ms. Conley's records requests were willfully denied, it had discretion to award Ms. Conley fees related to these two requests only.

We do not disagree with the trial court that Ms. Conley should be compensated for having to enforce her right to access the records requested in LURR A1 and LURR B11. However, the statute does not provide for attorney's fees incurred by Ms. Conley in litigating the other ten public records requests that were *not* willfully denied. To hold otherwise would both broaden the statute beyond the legislature's intended scope and would be contrary to this Court's opinion in *Friedmann*. As such, we conclude that the trial court abused its discretion by awarding Ms. Conley attorney's fees incurred throughout litigation when it found that only two of her records requests were willfully denied. Accordingly, we vacate those portions of the trial court's November 24, 2020 order awarding $55,762.50 for Mr. Fels' attorney's fees and $2,805.25 for expenses. We note, however, that the trial court's award of $19,440.00 for Mr. Rivkin's fees is affirmed because, as discussed, *supra*, KCSO failed to properly raise this issue on appeal. Having affirmed the trial court's findings that KCSO willfully denied Ms. Conley's LURR A1 and LURR B11 requests, on remand, we instruct the trial court to determine Ms. Conley's reasonable costs and attorney's fees related *solely* to her efforts to obtain the records from these requests. It appears from the record that the trial court conducted separate hearings on each of Ms. Conley's LURR requests. In making its attorney's fees award, we instruct the trial court to consider the hearings on LURR A1 and LURR B11. Inasmuch as KCSO did not willfully deny Ms. Conley's other LURR requests, any attorney's fees incurred by her in connection with these other LURR requests and hearings should not be included in the trial court's attorney's fees award on remand. The trial court's order is otherwise affirmed.

## C. Appellate Attorney's Fees

The final issue on appeal is whether Ms. Conley is entitled to an award of appellate attorney's fees and post-judgment interest. It is within our discretion to award such fees for Ms. Conley's efforts to obtain records related to her LURR A1 and LURR B11 requests. *See Friedmann*, 2013 WL 784584 at *12; *Schneider*, 226 S.W.3d at 348. However, in view of the fact that Ms. Conley has not prevailed on the issue of her trial attorney's fees, we decline to exercise our discretion to award her attorney's fees on appeal.

## VI. Conclusion

For the foregoing reasons, we vacate the trial court's award of Mr. Fels' attorney's fees and Ms. Conley's costs incurred throughout the entire litigation. The trial court's order is otherwise affirmed, and the case is remanded for such further proceedings as may be necessary and are consistent with this opinion, including, but not limited to a determination of Ms. Conley's reasonable costs and attorney's fees incurred at trial related to her LURR A1 and LURR B11 requests and for entry of judgment on same. Costs of the appeal are assessed one-half to Appellant, Knox County Sheriff's Office, and one-half to Appellee, Meghan Conley, for all of which execution may issue if necessary.

s/ Kenny Armstrong
KENNY ARMSTRONG, JUDGE