IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 1, 2025

**ALEXANDER C. RICKETTS v. ASHLEE N. BENNETT**

**Appeal from the Juvenile Court for Wilson County**
**No. 2017-JV-352    A. Ensley Hagan, Jr., Judge**

———————————————————

**No. M2024-01689-COA-R3-JV**

———————————————————

The trial court approved a parenting plan jointly proposed by an unmarried Mother and Father, who at the time were living together. Their relationship, subsequently, deteriorated, and each parent later sought modification of the existing plan. With some minor alterations, the trial court largely adopted Mother's proposed parenting plan. Father appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

JEFFREY USMAN, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and VALERIE L. SMITH, J., joined.

F. Michie Gibson, Jr., Old Hickory, Tennessee, for the appellant, Alexander C. Ricketts.[1]

**OPINION**

I.

Appellant Alexander C. Ricketts (Father) challenges the trial court's modification of the parenting plan, which awarded significantly greater parenting time to Appellee Ashlee N. Bennett (Mother) as to the couple's two minor children, R.A.R. and R.L.R. (the Children). R.A.R. and R.L.R. were seven and six years old respectively at the time of trial. Having heard the evidence presented, the trial court found a material change of circumstances and that Mother's proposed parenting plan, with a few minor modifications, was "in the best interests of the children." Father appealed. On appeal, he challenges the

---

[1] Appellee Ashlee N. Bennett did not submit a response brief in this matter. The clerk's office entered an order on June 11, 2025, requesting Ms. Bennett to show cause for why the appeal should not be decided solely "on the record and the appellant's brief." Ms. Bennett did not respond. Accordingly, we decide this appeal without considering arguments from Ms. Bennett.

sufficiency of the trial court's findings, argues no material change of circumstance occurred, and asserts the trial court's parenting plan is internally contradictory regarding the handling of Christmas vacation and the New Year's holiday, and contains mathematical errors in calculating the days awarded to Father.

In January 2018, the Wilson County Juvenile Court approved of a proposed agreed order from Father and Mother. In accordance therewith, the trial court determined Father is R.A.R.'s father based on the results of paternity testing. The Juvenile Court also approved of a permanent parenting plan for R.A.R., who was less than one year old at the time. R.L.R. would not be born for another five months. The approved parenting plan noted that Father and Mother were cohabitating and that Father was earning nearly double Mother's gross monthly income but was using that money to pay each month's rent and utilities. As a result, the order did not require Father to pay child support. The trial court also awarded the parents equal parenting time and decision-making authority. The ratified plan also provided that the parties agreed to undergo mediation if they "[s]hould . . . disagree about this Parenting Plan or wish to modify it" later.

Approximately a week later, Father, proceeding pro se, filed a document in the Juvenile Court declaring, "I NEED HELP!! I NEED A TEMP COURT ORDER SO I CAN SEE MY SON!!!" Therein, Father alleged, among other things, that Mother was not "following thru with the court order of us sharing the parenting [time]," that Mother was not "fit to be able to support my child," that Mother was neglecting R.A.R.'s hygiene and medical needs, that Mother was allowing R.A.R.'s Tenncare medical coverage to lapse, and that Mother "does not have the mental state to be able to handle this kid like she should." Father requested "full custody of this child for the sake of the well being of my child."

In March 2018, Father, who had subsequently obtained counsel, filed an "Amended Petition for Contempt and Petition to Modify Permanent Parenting Plan." Therein, Father filled in some of the gaps related to his allegations that were left unclear from his pro se filing. For example, Father explained in this amended petition that he and Mother, who was pregnant with the couple's second child, were no longer cohabitating. Father alleged that Mother left the home with R.A.R. and began "living with the minor child in a residence with five other people and numerous dogs." Father asserted that this was "not a healthy environment" and that the end of his cohabitation with Mother constituted a material change of circumstances. Father proposed a new parenting plan that would change Mother's parenting time from an equal split to Mother having zero days of parenting time.

Father's first attorney, subsequently, withdrew from representing Father. While it is unclear from the record why Father's first attorney withdrew from this case, withdrawal requests from Father's three subsequent attorneys all indicate that communication issues and disagreements concerning the appropriate way to prosecute this case plagued Father's representation relationships. Over the course of approximately six years, the Juvenile

- 2 -

Court granted four separate withdrawal motions from Father's various attorneys.

Meanwhile, in September 2019, Mother filed an "Answer to Petition and Counterclaim for Modification of Parenting Plan and Motion for Relief Pendente Lite and Motion for Emergency Ex Parte Restraining Order." By this point, Mother had given birth to the parties' second child, R.L.R., and she requested to have R.L.R. added to the parties' parenting plan. By way of articulating what material changes of circumstance warranted modification of the existing plan, Mother identified four reasons for her request: (1) the end of her cohabitation with Father; (2) the birth of the parties' second child, who was not covered by the existing plan; (3) the need to revisit the topic of child support based on the terminated cohabitation; and (4) the "increasingly exhibited bizarre, unstable behavior" by Father "with respect to parenting the children." Mother asserted that Father had moved into a two-bedroom apartment that was also occupied by his mother, his two adult sisters, and his niece, which suggested to her that Father did not have adequate space to care for R.A.R. and R.L.R. on a prolonged basis. She alleged, among other things, that Father had subjected her to "vindictive, vile verbal and behavioral assaults"; that Father "engage[d] in vituperative tirades against [her] in the presence of the children thereby causing emotional distress"; that Father's financial situation was uncertain, citing concerns raised by his landlord and the children's daycare providers regarding not paying rent and providing bad checks; and that Father was actually the one being inattentive with the children's hygiene, sending them to school in dirty clothes. Mother asserted that Father also, with no basis, called the police and encouraged them to perform a welfare check on the Children while they were in Mother's custody. Additionally, Mother alleged that Father unilaterally ended the children's daycare without informing her about that decision in advance. Also, she noted a troubling incident involving a transfer of the Children. When she contacted Father about picking up the Children, Father refused to provide their location. Mother then went to paternal grandmother's apartment to retrieve them, met resistance, and had to involve law enforcement before the Children were returned to her.

The trial court granted Mother's request for a temporary restraining order in September 2019 but vacated the restraining order in October 2019. The trial court endeavored to expedite the case. Father, however, requested multiple continuances stemming from the withdrawals of his attorneys and desiring to obtain new representation. The trial court entered an order setting a hearing date in April 2020. Having experienced multiple previous delays, the trial court warned Father that no further continuances would be granted absent "the most extenuating of emergencies. A falling out with an attorney shall not be deemed an emergency." However, due to what appears to be the failure to complete discovery, delay, nevertheless, occurred again. The case languished for two and a half years with discovery not completed.

The parties brought the case out of its slumber in the summer of 2023 by filing a series of motions. Mother started by once again seeking modification of the existing parenting plan. She also noted that no parenting plan had been approved that purported to

address R.L.R. She also complained that Father was, among other things, interfering with the children's schooling in Wilson County. Father, now represented by his fourth attorney, filed a response to Mother's original counterclaim for modification. In responding, Father "admit[ted] there has been a substantial and material change of circumstances since the entry of the current parenting plan." He denied Mother's allegations regarding his "bizarre behavior." He urged the trial court not to name Mother as primary residential parent. On the same date that Father filed this response, Father also submitted to the trial court an alternative proposed parenting plan to the one he had previously filed. In his original proposal, Father had sought to have the trial court give Mother zero days of parenting time. In this alternative proposed plan, Father asked the trial court for a 50/50 split in custody and joint decision-making authority as to the Children. Responding to these filings, the trial court ordered the parties to promptly complete their outstanding discovery obligations and to participate in mediation, which was required under the parties' existing parenting plan. The trial court ordered the parties to complete these requirements by October 2023.

In April 2024, Mother submitted another motion for pendente lite relief, asserting that, despite her best efforts, Father had failed to participate in mediation. Mother also asserted in this motion that Father continued to engage in actions detrimental to the Children. Mother recounted an instance where she received a call from the school that Father sent one of the Children to school while still suffering from an untreated burn. Mother also expressed frustration at Father for allegedly being hostile with regard to the formation of an individualized education plan (IEP) for R.A.R., who had been diagnosed with autism. Faced with this information, the trial court waived the mediation requirement and set the matter for trial.

Father's fourth attorney withdrew from the case in advance of trial. The record includes a pre-trial statement filed by Mother but no pre-trial statement filed by Father, who had also failed to meet his discovery-related obligations. Mother informed the trial court that she intended to call multiple witnesses, explained her need for child support through the submission of tax documents, and proposed a new parenting plan. Regarding Mother's proposed parenting plan, she recommended that the trial court grant her 279 days of custody and grant Father 86 days of custody. Under her proposed plan, Father would generally have the children every other weekend with holiday and vacation alterations. Mother urged the trial court to name her as primary residential parent and to give her exclusive decision-making authority for the children.[2]

A hearing was held in September 2024. Having heard the evidence presented, the

---

[2] Mother also submitted a request for attorney's fees in the amount of $9,275. Mother's counsel submitted a list of time entries amounting to 37.1 hours of work on Mother's case and explained that those hours were billed at a rate of $250 per hour. After the final hearing, the trial court awarded Mother a judgment for her attorney's fees but only in the amount of $1,950. Neither party appealed the trial court's attorney's fee award.

- 4 -

trial court modified the parties' parenting plan and entered an order with a revised parenting plan. Therein, the trial court named Mother as primary residential parent and addressed a variety of other matters, including the residential schedule, child support, and decision-making authority. In its final order, the trial court stated, in part, the following:

> The existing parenting plan was entered January 30, 2018, when the parties still resided together. At that time, the child [R.A.R.] was only approximately six months old, and the child [R.L.R.] had not yet been born. Upon the evidence presented, the Court finds that modification of the existing parenting arrangement respecting the child [R.A.R.] and the creation of a parenting arrangement respecting the child [R.L.R.], all as set forth (with minor modifications) in the permanent parenting plan order proposed by the mother, are in the best interests of the children.

In doing so, the trial court failed to make in its order additional findings of fact or conclusions of law in support of its modified plan.

The trial court's ruling as to residential time with each parent, the day-to-day schedule, holiday schedule, and Winter (Christmas) Vacation are also relevant to this appeal. The trial court determined that the Children would spend 279 days with Mother and 86 days with Father. The day-to-day schedule provided as a default the Children would be with Father from after school or 6:00 p.m., if there was no school, on Fridays until Sunday at 6 p.m. every other week; otherwise, the Children would be with Mother. During summer vacation, the plan increased the Children's time with Father in the following manner: "the father shall be entitled to every-other-week parenting time, beginning at 6:00 p.m. on the first Friday that school is out and ending on the following Friday at 6:00 p.m., until he has had four such week-long periods." For the holiday schedule, the trial court provided as follows:

## C. HOLIDAY SCHEDULE AND OTHER SCHOOL FREE DAYS

*Indicate if child or children will be with parent in ODD or EVEN numbered years or EVERY year:*

|  | MOTHER | FATHER |
|---|---|---|
| New Year's Day | Even | Odd |
| Martin Luther King Day | Day-to-Day Schedule | Day-to-Day Schedule |
| Presidents' Day | Day-to-Day Schedule | Day-to-Day Schedule |
| Easter Day (unless otherwise coinciding with Spring Vacation) | Odd | Even |
| Passover Day (unless otherwise coinciding with Spring Vacation) | Day-to-Day Schedule | Day-to-Day Schedule |
| Mother's Day | Every | None |
| Memorial Day (if no school) | Day-to-Day Schedule | Day-to-Day Schedule |
| Father's Day | None | Every |
| July 4th | Even | Odd |
| Labor Day | Day-to-Day Schedule | Day-to-Day Schedule |
| Halloween | Even | Odd |
| Thanksgiving Day & Friday | Odd | Even |
| Children's Birthdays | Every | None |
| Other School-Free Days | Day-to-Day Schedule | Day-to-Day Schedule |
| Mother's Birthday | Every | None |
| Father's Birthday | None | Every |
| Other: N/A | Day-to-Day Schedule | Day-to-Day Schedule |

A holiday shall begin at 6:00 p.m. on the night preceding the holiday and end at 6:00 p.m. the night of the holiday, unless otherwise noted here_____N/A_____.

Regarding both spring and fall break, the trial court provided that Father would have the first half of the vacation from school with Mother having the second half of vacation. Regarding Winter (Christmas) Vacation, the trial court provided as follows:

## E. WINTER (CHRISTMAS) VACATION

The **x** mother ☐ father shall have the child or children for the first period from the day and time school is dismissed until December __25th__ at __2:00 p.m.__ ☐ in odd-numbered years **x** in even-numbered years ☐ every year. The other parent will have the child or children for the second period from the day and time indicated above until 6:00 p.m. on the evening before school resumes. The parties shall alternate the first and second periods each year.

Father did not file any post-trial motions. He instead appealed. Father initially failed to file a transcript or Rule 24 Statement of the Evidence. Accordingly, the Clerk of the Appellate Courts issued an administrative order providing, in part, as follows:

> Pursuant to Tenn. R. App. P. 25(a), the trial court clerk has notified this court that the appellant has failed to comply with Tenn. R. App. P. 24(b), (c) or (d). Tenn. R. App. P. 24 (b) and (c) require an appellant to file a transcript or statement of the evidence within sixty (60) days after the notice of appeal is

filed. If no transcript or statement of the evidence is to be filed, the appellant must file a notice that neither will be filed pursuant to Tenn. R. App. P. 24(d).

It is, therefore, ordered that, within fifteen (15) days following the entry of this order, the appellant either file with the trial court clerk a transcript of the evidence, a statement of the evidence, or a Tenn. R. App. P. 24(d) notice, or else show cause in this court why the appeal should not be dismissed for failure to comply with Tenn. R. App. P. 24. The trial court clerk shall promptly notify this court if the appellant fails to file with the trial court clerk a transcript of the evidence, a statement of the evidence or a notice pursuant to Tenn. R. App. P. 24(d) within fifteen (15) days following the entry of this order.

Father responded by submitting a proposed statement of the case. Father's proposed statement did not actually address the evidence presented at trial but instead advanced legal arguments and objections to the trial court's ruling. The proposed statement provided as follows:

1. The Final Order dated October 31, 2024, is defective pursuant to the statute as it fails to comply with The Tennessee Law on Shared Parenting (Senate Bill 1690), beginning July 1, 2024, which requires a new legal presumption in Tennessee that joint legal custody or equal parenting time schedules are in the child's best interest. This law further requires that the court must provide written findings if it deviates from the presumption of equal time-sharing. There are no such written findings contained in the Final Order.

2. The Permanent Parenting Plan Order entered in conjunction with the Final Order dated October 31, 2024 contains inconsistencies wherein it indicates that the Father shall have 86 days of parenting time, however, in adding up the days granted to Father it is over 102 days. The Christmas and New Year's parenting scheduling are in conflict with each other as the party who has the child after Christmas and until school starts is not the party who has New Year's Day. The Father has no parenting time on the children's birthdays.

3. Further, there has been no material change in circumstance required by statute to warrant a modification to such an extent that the Father's time has been drastically reduced from the previous Order of the Court.

The trial court rejected Father's proposed statement, concluding it was insufficient. Instead, the trial court penned its own statement of the evidence, providing in relevant part as follows:

- 7 -

[T]he Trial Court, having respectfully denied Father's proposed *Statement of the Case*, and in compliance with T.R.A.P. 24(C), hereby adopts the following complete and accurate statement of the facts of the case:

. . .

2. Each party filed petitions for modification of the Permanent Parenting Plan, and Father's petition included contempt against Mother; and trial was conducted on September 20 2024, following which the Final Order and Permanent Parenting Plan were entered on October 31, 2024.

3. Father, being self-represented, failed to comply with Local Rule 15, and was not allowed to present his case in chief, though he retained the right of cross-examination.[3]

4. Counsel for Mother made an oral motion for default judgment against Father which was denied by the Trial Court, there having been no written motion filed with the Court.

5. The Trial Court made the following findings of fact:

- A material change in circumstances exists warranting modification of their Proposed Permanent Parenting Plan, and a best interests determination was made by the Trial Court.
- The parties' Permanent Parenting Plan was entered on January 30, 2018 while the parties still lived together, at which time the minor child [R.A.R.] was only approximately six months old, and the minor child [R.L.R.] was not yet born.
- Only some seven (7) days later on February 6, 2018, Father filed his first of several *pro se* pleadings (both in Wilson County and Davidson County) seeking modification of the parties' Permanent Parenting Plan.[4]
- The parties have been exercising a week-to-week parenting schedule for some time.
- The parties have a volatile relationship and have not been able to

---

[3] Father does not address in his briefing this asserted violation of Local Rule 15 or the trial court's refusal to allow him to present his case in chief.

[4] While Father made several filings in this case in Davidson County, the entirety of this case was eventually transferred to the Wilson County Juvenile Court. At one time, Father filed a pro se motion seeking intercounty transfer of the case back to Davidson County, but he later, based on the advice of his fourth attorney, struck that motion. By the time of the final hearing, all of the proceedings in this case were properly taking place before the Wilson County Juvenile Court.

amicably co-parent.

- Mother testified as to one incident where Father refused to tell her where the children were at the time of the scheduled exchange, leaving Mother to enlist the assistance of police to retrieve the children; and the next day, Father requested a welfare check at Mother's residence, falsely claiming that Mother was interfering with his custody rights.
- Mother testified as to multiple instances that Father refused to disclose his address where the children would be residing while in his care.
- Mother testified to examples of Father's vindictive behavior, one example being that Father paid the children's daycare with a bad check and then disenrolled the children without Mother's consent; Maternal Grandmother paid [the] outstanding balance to [the] daycare and re-enrolled [the] kids; and Father disenrolled them again.
- Mother testified as to the parties' inability to amicably schedule Facetime calls.
- Mother introduced photographs of Father's home and yard littered with trash, clothes, and other items.
- Mother testified that Father has neglected the minor children's hygiene, often returning the children in dirty clothes and unbathed.
- Mother has been primarily responsible for participating in the minor children's education.
- The oldest child [R.A.R.] has been diagnosed with autism, and has struggled academically and behaviorally at school.
- On one occasion, Father participated via Google Meet in an IEP meeting for the oldest child [R.A.R.], and became disruptive when he didn't agree with the IEP team's recommendations.
- Mother was primarily responsible for scheduling and taking the children to their medical and dental appointments.
- While the parties have been exercising an equal parenting schedule, the proof adduced is that Mother has been the primary caregiver.

6. Mother successfully carried the burden of proof that a modification was warranted, and that her Proposed Parenting Plan is in the best interests of the minor children, with specific modifications.

. . .

- Mother should have full decision making authority as to educational and extracurricular activities.

- 9 -

- Each party should have religious decision making authority while the children are in their physical custody, so long as it does not present a danger to the children.
- Mother should have full non-emergency medical decision making authority.
- Transportation should be shared by the parties, the parent starting parenting time to pick up the children at school or the other parent's home, whichever applies.
- The day-to-day parenting schedule should be set in accordance with his current parenting schedule for his other minor child, and Father should pick up the children from the school the same day (September 20, 2024).

7. The *Final Order and Permanent Parenting Plan* were entered on October 31, 2024, though said Final Order does not contain a complete recitation of the Court's findings as set out herein.

(Citations omitted.)

With the support of his fifth attorney, Father appealed. On appeal, Father raises the following four issues (as renumbered):

I. Whether the Juvenile Court erred in entering an order for custody arrangements without including written findings of fact and conclusions of law to support the basis for the order, as required by Tenn. Code Ann. § 36-6-101(a)(2)(A)(I)(Tenn. 2023).

II. Whether the Juvenile Court erred in modifying the existing parenting plan without a material change in circumstances, as required by Tenn. Code Ann. § 36-6-101(a).

III. Whether the Juvenile Court erred in failing to comply with The Tennessee Law on Shared Parenting (Senate Bill 1690), which establishes a presumption that joint legal custody or equal parenting time schedules are in the child's best interests.

IV. Whether the Juvenile Court erred in approving a Permanent Parenting Plan Order that contains mathematical inconsistencies in the calculation of Appellant's parenting time and contradictions in holiday time.

II.

Father's appeal concerns the trial court's modification of the parties' existing

parenting plan. We review a trial court's modification of a parenting plan de novo, affording a presumption of correctness to any factual findings unless the evidence preponderates against them. *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013). "A trial court's determinations of whether a material change has occurred and whether modification of a parenting plan serves a child's best interests are factual questions." *Id.* Regarding modifications themselves, this court will keep a trial court's decision in place unless the trial court abused its discretion. *Id.* A trial court abuses its discretion in this context when it "applies incorrect legal standards, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *West v. Schofield*, 460 S.W.3d 113, 120 (Tenn. 2015).

## III.

Father argues the trial court erred by ordering a change of the parenting plan without providing written findings of fact and conclusions of law to support its decision, as required by Tennessee Code Annotated section 36-6-101(a)(2)(A)(i). Father does not, however, seek a remand for more detailed factual findings; rather, he references the deficiency of findings as an indication of the trial court's error in its decision-making with respect to awarding more parenting time to Mother.

Under Tennessee Code Annotated section 36-6-101(a)(2)(A)(i), "[u]nless both parents have agreed to a custody arrangement and parenting plan, orders for custody arrangements must include written findings of fact and conclusions of law to support the basis for the order." This requirement also applies to the modification of existing parenting plans. Tenn. Code Ann. § 36-6-101(a)(2)(B)(ii) ("In each contested case, the court shall make such a finding as to the reason and the facts that constitute the basis for the custody determination."). The trial court failed in the present case to make the required findings.

A failure to make adequate factual findings does not, however, automatically require vacating and remanding to the trial court to make additional findings. To the contrary,

> Where findings are insufficient . . ., generally there are two available remedies for an appellate court. "One remedy appellate courts typically apply . . . is to remand the case to the trial court with directions to issue sufficient findings and conclusions. Alternatively, an appellate court may choose to remedy the trial court's deficient factual findings by conducting a de novo review of the record to determine where the preponderance of the evidence lies." *Lovlace [v. Copley]*, 418 S.W.3d [1,] 36 [(Tenn. 2013)] (citations omitted); *see also Gooding v. Gooding*, 477 S.W.3d 774, 783 (Tenn. Ct. App. 2015) (explaining de novo review option); *Hall v. Humphrey*, 673 S.W.3d 613, 627 (Tenn. Ct. App. 2023) (explaining vacatur option). This second option is often referred to as "soldiering on." *Manning*

> [v. Manning], 474 S.W.3d [252,] 260 [(Tenn. Ct. App. 2015)] (calling the
> second option the "soldier on" path).

*Bailey v. Bailey*, No. M2022-01467-COA-R3-CV, 2025 WL 1517411, at *12 (Tenn. Ct. App. May 28, 2025).

The trial court appears to have recognized its own error. In its Rule 24 Statement of the Evidence, the trial court noted that its "Final Order does not contain a complete recitation of the Court's findings as set out herein." The trial court made use of the Rule 24 Statement of the Evidence to explain the basis for its decision regarding the parenting plan in the present case, indicating what its unstated findings had been that were underlying its order. In its Rule 24 statement, the trial court detailed the testimony that had been presented in the case and indicated that its Rule 24 Statement of Evidence was "a complete and accurate statement of the facts of the case." Father's proposed Rule 24 statement, which was rejected by the trial court, references no additional evidence or testimony that was omitted from the trial court's ultimate Rule 24 statement of the evidence.

In determining whether remanding the case or soldiering on is the proper path to follow, we note that soldiering on can promote important policy goals of the judiciary, such as protecting "judicial economy" and providing "finality" to the parties involved in what can sometimes become protracted litigation. *See, e.g., In re Houston D.*, 660 S.W.3d 704, 721-22 (Tenn. Ct. App. 2022) (collecting cases); *In re S.J.*, 387 S.W.3d 576, 594 n.9 (Tenn. Ct. App. 2012) (referencing potential Rule 52.01 violation but choosing to soldier on "so as to not delay resolution of the status of these children"); *cf. Long v. Long*, 642 S.W.3d 803, 816-817 (Tenn. Ct. App. 2021) (analyzing soldiering on option in the context of a Rule 56.04 violation). Conversely, vacatur is preferred when the issues presented on appeal are fact-intensive and turn on disputed factual predicates. *See, e.g., Cox v. Cox*, No. E2016-01097-COA-R3-CV, 2017 WL 6517596, at *6 (Tenn. Ct. App. Dec. 20, 2017) (concerning equitable division of marital property); *Grubb v. Grubb*, No. E2016-01851-COA-R3-CV, 2017 WL 2492085, at *13 (Tenn. Ct. App. June 9, 2017) ("The parties raise a host of issues, including those issues pertaining to classification of separate and marital property, the division of the marital estate, child support, and school tuition. Attempting to resolve these fact-oriented issues without detailed factual findings by the Trial Court would be akin to conducting a fresh trial, which is not our role."). Vacatur also has been employed where the outcome may hinge on the credibility of witnesses but the trial court failed to make helpful credibility findings. *Cox*, 2017 WL 6517596, at *6 ("The issues raised on appeal involve credibility determinations and a careful balancing of the equities between the parties, not clear legal issues."); *Rosebrough v. Caldwell*, No. W2018-01168-COA-R3-CV, 2019 WL 6898218, at *4 (Tenn. Ct. App. Dec. 18, 2019) ("Despite the parties presenting contradictory testimony, the Trial Court did not make credibility determinations or specific findings of fact as to many of those factual issues . . . . Many of the statements . . . were conclusory statements regarding the evidence presented and not specific findings of fact as required."); *Manning*, 474 S.W.3d at 262 (justifying vacatur in

part on the fact that the "trial court made no specific credibility findings with regard to the parties"); *cf. Borne v. Celadon Trucking Servs., Inc.*, 532 S.W.3d 274, 313-14 (Tenn. 2017) (remanding in a remittitur case instead of soldiering on "[w]here credibility is a significant issue," because the appellate court is left "without some idea of whether or in what regard the trial court's assessment of the witnesses' credibility differed from that of the jury," rendering the appellate court "unable to review the evidence to determine whether it preponderates against the suggested remittitur").

Alternatively, soldiering on is appropriate, for example, when the trial court's decision is "readily ascertainable" or "involves only a clear legal issue." *Hardin v. Hardin*, No. W2012-00273-COA-R3-CV, 2012 WL 6727533, at *5 (Tenn. Ct. App. Dec. 27, 2012); *Hanson v. J.C. Hobbs Co.*, No. W2011-02523-COA-R3-CV, 2012 WL 5873582, at *10 (Tenn. Ct. App. Nov. 21, 2012); *Town of Middleton v. City of Bolivar*, No. W2011-01592-COA-R3-CV, 2012 WL 2865960, at *26 (Tenn. Ct. App. July 13, 2012); *Clarke v. City of Memphis*, 473 S.W.3d 285, 291 (Tenn. Ct. App. 2015); *In re Estate of Dell'Aquila*, No. M2018-01090-COA-R3-CV, 2019 WL 337037, at *3 (Tenn. Ct. App. Jan. 25, 2019). While the trial court did not make the appropriate findings in its order, the trial court's findings in its Rule 24 Statement of Evidence provide this court with clear indication of what the facts are and what the basis of the trial court's decision was. *See, e.g., Bean v. Bean*, No. M2022-00394-COA-R3-CV, 2022 WL 17830533, at *8 (Tenn. Ct. App. Dec. 21, 2022) (noting that a Tennessee appellate court may "solider on" when "the trial court's reasoning is . . . 'readily ascertainable'"); *Dezevallos v. Terry Burns Ins. Agency, LLC*, No. M2017-02030-COA-R3-CV, 2018 WL 1924340, at *2 (Tenn. Ct. App. Apr. 24, 2018) (noting that "the facts are readily ascertainable from the record" in deciding to "solider on"). Additionally, Father did not offer any additional facts in his proposed Rule 24 statement that are omitted from the trial court's Rule 24 Statement of the Evidence. Reflecting on the issues presented by Father on appeal and the clarity of the facts and basis for the trial court's ruling, we conclude that the present case is an appropriate case for "soldiering on" to address Father's substantive issues on appeal.

IV.

Turning next to the trial court's material change of circumstances determination, Father argues the trial court erred in finding that a material change of circumstances occurred, which is a prerequisite for modifying a parenting plan. Father's argument on this point is unavailing for multiple reasons. We note two below.

One, Father both asserted and conceded before the trial court that a material change of circumstances had occurred. In his Petition to Modify Permanent Parenting Plan, Father, acting with the support of counsel, stated: "Father would show there has been a material change in circumstances since the entry of the current parenting plan, which warrants modification of the existing Permanent Parenting Plan." In responding to Mother's Counterclaim for Modification of Parenting Plan, Father conceded the following: "Father

- 13 -

admits there has been a substantial and material change of circumstances since the entry of the current parenting plan."

The Tennessee Rules of Appellate Procedure provide that "[n]othing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Tenn. R. App. P. 36(a). Before the trial court, Father took the litigation position that there was a material change of circumstances. His dissatisfaction with the trial court's modification of the parenting plan does not enable him to challenge on appeal a finding of a material change of circumstances, which he both asserted and conceded had occurred in litigating this case before the trial court.

Two, this case plainly involves a material change of circumstances. When the original plan was entered, Father and Mother were cohabitating. Multiple aspects of the original parenting plan were directly tied with the parties' cohabitation. Subsequently, their relationship broke down. In addition to no longer cohabitating, Father and Mother have developed "a volatile relationship and have not been able to amicably co-parent." Furthermore, R.L.R. is not even included in the parenting plan (having not been born when it was entered). R.A.R., who was six months old when the original plan was agreed upon, has now been diagnosed with autism and is struggling behaviorally and educationally in school. We have little difficulty in concluding that the trial court did not err in determining that there has been a material change of circumstances in the present case.

V.

Father also argues the trial court erred by failing to grant equivalent parenting time to himself and Mother. He asserts that Tennessee law "establishes a presumption that joint legal custody or equal parenting time schedules are in the [children's] best interest," and argues that the trial court did not make "any findings of fact to support a deviation from the presumption." Father does not develop an argument that equal parenting time is actually in the Children's best interest. He instead relies upon what he purports is a presumption in Tennessee law. In support of Father's contention that Tennessee law establishes such a presumption, he cites unadopted proposed, but seemingly dormant, legislation under which there would be a "presumption, rebuttable by a preponderance of the evidence, that joint legal custody and equally shared parenting time is in the best interest of the child." S.B. 1690, 113th Gen. Assemb. (Tenn. 2024).

By statute, however, Tennessee law provides that "[e]xcept as provided in this subdivision (a)(2)(A), neither a preference nor a presumption for or against joint legal custody, joint physical custody, or sole custody is established, but the court shall have the widest discretion to order a custody arrangement that is in the best interest of the child." Tenn. Code Ann. § 36-6-101(a)(2)(A)(i). Proposed legislation does not trump duly enacted law. Accordingly, the "polestar, the *alpha and omega*" in child custody determinations in

- 14 -

Tennessee remains the best interests of the children. *Bailey*, 2025 WL 1517411, at \*14 (quoting *Steen v. Steen*, 61 S.W.3d 324, 327 (Tenn. Ct. App. 2001)).

Here, the trial court concluded that the allocation of time provided in Mother's proposed parenting plan was in the Children's best interest. The trial court noted that "[t]he parties have a volatile relationship and have not been able to amicably co-parent." The trial court's findings plainly place responsibility for the inability to co-parent amicably upon Father. The trial court noted "multiple instances" of Father refusing to disclose his address where the Children would be residing while they were in his care. The trial court also noted Father's false claim to law enforcement that Mother was interfering with his custody rights and his baseless request for a welfare check at Mother's residence. Father also disenrolled the Children from daycare without Mother's consent and made payment to the daycare with a bad check, and then disenrolled the Children again after material grandmother paid the outstanding balance. In terms of sanitary and hygienic conditions for the Children, the trial court noted Father's home and yard were littered with trash and that Father neglected the Children's hygiene, returning them unbathed and in dirty clothes. Father was also disruptive in one of R.A.R.'s IEP meetings, which was being conducted to establish an IEP for R.A.R. in connection with his autism diagnosis. Additionally, Mother is also the one that takes responsibility for the dental and medical appointments of the Children. Furthermore, "[w]hile the parties have been exercising an equal parenting schedule, the proof adduced is that Mother has been the primary caregiver." Based upon the evidence presented, the trial court concluded that the plan that it adopted was in the best interest of the Children.

Beyond his objection to the deficient factual findings in the trial court's order, which we addressed in Section III above, and reliance upon proposed legislation that has not been adopted into Tennessee law and that runs contrary to existing Tennessee law, Father has not developed any argument that the trial court abused its discretion. *See Armbrister*, 414 S.W.3d at 692. "It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her. . . ." *Sneed v. Bd. of Prof'l Responsibility of Sup. Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010). Considered in light of the arguments advanced by Father, we find no error by the trial court in concluding that deviation from an even split in parenting time is in the best interests of the Children.

VI.

Father also contends that there is an internal contradiction in the parenting plan between the New Year's holiday language in the parenting plan and the Winter (Christmas) vacation language in the parenting plan. Father notes that the New Year's holiday schedule states that Mother will have the Children in even numbered years and that Father will have the Children in odd numbered. He further notes that under the parenting plan the Winter (Christmas) Vacation language provides that Mother has the Children until 2:00 p.m. December 25, the first-half of vacation, in even numbered years and that Father has the

- 15 -

Children from December 25 at 2:00 p.m. until school starts, the second-half of vacation, in even numbered years. The parties then flip with Father having the first-half and Mother having the second-half in odd numbered years. Father asserts this creates a conflict between the Winter (Christmas) vacation portion of the plan and the New Year's holiday portion of the plan.

Father is mistaken as to this contention. Under the parenting plan, in even numbered years, Father will have the Children for the second-half of vacation up until 6:00 p.m. the day before school starts back, and since the calendar flips to a new year, "New Year's Day" will be in an odd numbered year. Under the parenting plan, Father has the Children for New Year's Day in odd numbered years. Alternatively, in odd numbered years when Mother has the Children during the second-half of Christmas vacation, as the calendar flips a new year, New Year's Day will be an even numbered year. Under the parenting plan, Mother has the Children for New Year's Day in even numbered years. Accordingly, we do not see the internal inconsistency that Father contends exists, and we find no error in this regard.

VII.

Father also sets forth as an issue on appeal "Whether the Juvenile Court erred in approving a Permanent Parenting Plan Order that contains mathematical inconsistencies in the calculation of Appellant's parenting time." The entirety of Father's argument as to this consists solely of the following assertion: "the Final Order is defective as the number of days awarded to the Appellant/Father are not calculated correctly." Father does not indicate how many days Father was awarded or in what manner he believes the days to have been miscalculated.

It is not immediately apparent to this court that the trial court's order erred in terms of mathematical calculation. Father has failed to articulate or develop an argument that demonstrates such an error has occurred. "This court must be mindful of its neutral role, and it must avoid lawyering for a party." *Simmons v. Islam*, No. M2023-01698-COA-R3-CV, 2024 WL 4948939, at *5 (Tenn. Ct. App. Dec. 3, 2024), *perm. app. denied* (Tenn. Apr. 17, 2025). "It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her. . . ." *Sneed,* 301 S.W.3d at 615. With Father having failed to develop an argument, we decline to take on the role of lawyering this issue on his behalf.

VIII.

In considering the arguments advanced on appeal and for the reasons discussed above, we affirm the judgment of the trial court and remand for further proceedings consistent with this opinion. The costs of the appeal are taxed to the appellant, Alexander

C. Ricketts, for which execution may issue if necessary.

s/ Jeffrey Usman
JEFFREY USMAN, JUDGE